**TERRY BARR SALES AGENCY, INC., Plaintiff–Appellant,**

v.

**ALL-LOCK COMPANY, INC., Defendant–Appellee.**

No. 95–1952.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 15, 1996.

Decided Sept. 16, 1996.

Daniel R. Rustmann, Buzel Long, Detroit, MI, Edward M. Kalinka (argued and briefed), Butzel Long, Birmingham, MI, for Plaintiff-Appellant.

Carl H. von Ende (argued and briefed), Frederick A. Acomb, Miller, Canfield, Paddock & Stone, Detroit, MI, Morrill J. Cole, Cole, Schotz, Meisel, Forman & Leonard, Hackensack, NJ, for Defendant-Appellee.

Before: BOYCE F. MARTIN, Jr., KRUPANSKY, and DAUGHTREY, Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

Terry Barr Sales Agency appeals the district court's award of summary judgment in favor of All–Lock Company on its breach of contract claim. Believing that the oral agreement between the parties did not include a commitment by All–Lock to pay commissions to Terry Barr Sales after the termination of the parties' agency agreement, the district court awarded summary judgment in favor of All–Lock from the bench after a hearing. Because genuine issues of material fact exist as to whether All–Lock is bound to pay commissions to Terry Barr Sales after termination of the parties' relationship, we REVERSE.

Terry Barr Sales is a sales representative company based in Detroit. All–Lock is a corporation engaged in the manufacture of locks and latches for automobiles with its corporate headquarters in New Jersey and its main manufacturing plant in Alabama. Terry Barr, the president of Terry Barr Sales, and Ron Hermann, the president of All–Lock, entered into an oral agency agreement in 1973. Under the agreement, Terry Barr Sales made sales to, and/or obtained orders from, automobile manufacturers for the purchase of All–Lock's locks and latches for use in new automobiles. In exchange for this service, Terry Barr Sales, which in effect is a manufacturer's representative, received a commission on sales to these "original equipment" customers, which included Ford, General Motors, and Chrysler.

The commission rate for new business was three and one-half percent of total sales. In addition, at the time the parties entered into the agreement, All–Lock had some pre-existing sales that it previously had serviced in-house. Terry Barr Sales agreed to service this "inherited" business at a two percent commission rate. Over the years, the parties' relationship proved mutually financially beneficial. Terry Barr Sales received significant commissions for sales made to "original equipment" customers, and All–Lock's sales to those customers increased dramatically. By 1992, Terry Barr Sales had obtained purchase orders for All–Lock to supply locks and latches for the entire General Motors "Saturn" automobile line.

Sometime after this, and for no explained reason in the record, All–Lock decided to terminate Terry Barr Sales as its manufacturer's sales representative. In March of 1994, Ron Hermann met with Terry Barr at an airport hotel in Detroit and informed him that All–Lock was terminating Terry Barr Sales on the "latch" product line. All–Lock was, however, retaining Terry Barr Sales on its lock and switch accounts. Terry Barr's deposition testimony reveals that the parties' dispute concerning commissions began at that meeting in Detroit. When Hermann informed Barr that All–Lock was terminating Terry Barr Sales on the latch product line, Barr indicated his belief that Terry Barr Sales was due commissions on continuing orders for the "life of the part."[1] Hermann, however, responded that All–Lock was will-

---

1. "Life of the part" commissions are apparently a fairly common practice in the manufacturer's representative business. As we explained in *Kingsley Assoc., Inc. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498, 502 n. 5 (6th Cir.1995), sales representatives commonly insist on "life of the part" provisions in agency contracts "because the sales representative must invest a great deal of time, effort, and money in securing an initial sale." However, after an initial sale is made, "the buyer may continue to use the part in the manufacture of its automobiles for many years." *Id.*

ing to pay commissions only for ninety days after termination of the agency relationship. Soon thereafter, Mike Smith, the vice-president at Terry Barr Sales, sent a letter to All–Lock which stated that:

At this time we must request that All–Lock abide by the standards of our industry regarding the relationship between manufacturers and their representatives and pay us life of the part commissions on current business, as well as life of the part commissions on all programs we started that are sourced to All–Lock within 12 months of termination.

The parties dispute the import of this letter. Terry Barr Sales claims it was simply a reaffirmation of its position that it was due commissions on all sales procured by Terry Barr Sales for the "life of the part." All–Lock claims that Terry Barr Sales threatened to refuse to work on the lock and switch accounts it retained, and that this letter is evidence of Terry Barr Sales attempt to force All–Lock into a new agreement providing for "life of the part" commissions. In any event, the parties communicated back and forth over the next few months, with settlement negotiations eventually grinding to a halt. Terry Barr Sales then filed the instant lawsuit.

Terry Barr Sales filed suit against All–Lock on May 6, 1994 in the district court, asserting claims for its commissions based on breach of contract, unjust enrichment, and promissory estoppel theories. Terry Barr Sales also sought relief pursuant to Section 2961 of Michigan's Revised Judicature Act, Mich. Comp. Laws § 600.2961, which allows for the recovery of treble damages for the intentional failure to pay commissions. Perhaps as a defensive maneuver in reaction to Terry Barr Sales' complaint, All–Lock subsequently filed suit against Terry Barr Sales in New Jersey, alleging that Terry Barr Sales breached the parties' oral agreement by performing poorly. The cases were consolidated in the Eastern District of Michigan.

After the parties conducted limited discovery, they filed cross motions for summary judgment on Terry Barr Sales' complaint.

After a hearing on the motions, the district court awarded summary judgment from the bench in favor of All–Lock. The court found that a contract existed between the parties. The court then orally dismissed Terry Barr Sales' claims based on unjust enrichment and promissory estoppel theories. The court went on to dismiss the claim seeking treble damages under Mich. Comp. Laws § 600.2961, holding, without opinion, that the statute violated the Title–Object Clause of the Michigan Constitution.[2] The court then dismissed Terry Barr Sales' claim that the parties' oral agreement included an obligation to pay commissions after termination of the agency relationship, stating from the bench that:

The plaintiff claims that the contract between these parties, although silent on the term post-termination commissions, should be constructed by the court to award such commissions to the plaintiff, the representative, because of the *Fernandez* line of cases which suggest that representatives should not be taken advantage of by manufacturers who will make a silent contract.

I presume then [sic] when the rep is [sic] procured a great many sales, dismiss them and keep the commissions. And, well, simply because of the equities that are presumed by that line of cases.

But the court is unable to buy into the presumption as to the equities of all such situations that those cases are based upon. Each case is different as to which is the strongest party economically.

They did both have the opportunity to make an express contract. And the court stepping in to impose such a radical term on business parties does not seem appropriate to do.

I think the *Andries* line of cases is better, but even with the *Fernandez* analysis, the plaintiff cannot prevail here because the district court in that case said where the contract and other circumstances offer no guidance as to the party's [sic] intentions, the duty to pay post-termination commissions may be implied-in-law to enforce no-

**2.** The title-object clause of the Michigan Constitution states that "[n]o law shall embrace more than one object, which shall be expressed in its title." Mich. Const. art. IV, § 24.

tions of fair dealing and prevent the principal from unfairly taking advantage of the agent's services, quoting *Reed.*

. . . .

The practices under this contract, although they are minimized strenuously by the plaintiff were that Barr got commissions from the inception of this contract from parts that were sold by someone and says that the efforts necessary to continue those sales required some commission to be paid. Now that's in opposition to the facts that the court should presume the agents' entitlement to future commissions, all future commissions, because the work is totally front-loaded. So there's an inconsistency here; that's another reason I can't buy into the *Fernandez* analysis.

The district court, based on this view of the hearing, awarded judgment in favor of All–Lock, stating its belief that the parties did not intend that Terry Barr Sales would receive commissions after termination of the agency relationship.

■ We review the district court's award of summary judgment *de novo. Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir.1989). Summary judgment is appropriate where there exists no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c). The test requires this Court to determine "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker,* 879 F.2d at 1310 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986)). When reviewing a summary judgment motion, it is essential that we view the evidence in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986). "[A]t the summary judgment stage the judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 247, 106 S.Ct. at 2509.

■ Before turning to the merits, we believe it appropriate to express our strong disapproval of the district court's decision to award summary judgment in favor of All–Lock without providing this Court with a written explanation of its reasoning. Instead, the district court simply entered judgment "for the reasons stated on the record in open Court on May 8, 1995." A written explanation of the district court's reasoning would have been extremely helpful for review in this case. *Cf. Anderson,* 477 U.S. at 250 n. 6, 106 S.Ct. at 2511 n. 6. This is particularly true where, as here, a district court awards summary judgment notwithstanding the parties' conflicting assertions of contractual intent, *P.F. Manley v. Plasti–Line, Inc.,* 808 F.2d 468, 471 (6th Cir.1987) (disputed issues of contractual intent normally preclude summary judgment), apparently rejecting contrary evidence introduced by the plaintiff in awarding summary judgment for the defendant. *Cf. Levinson v. Basic Inc.,* 786 F.2d 741, 749 (6th Cir.1986) (noting that summary judgment generally is inappropriate for issue of scienter, knowledge and intent), *rev'd on other grounds,* 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). It is beyond dispute that, when confronted with a motion for summary judgment, the district court cannot make credibility determinations, weigh the evidence, or draw inferences from the facts. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513; *Morales v. American Honda Motor Co.,* 71 F.3d 531, 535 (6th Cir.1995). All evidence presented by the non-moving party is to be taken as true. *Id.* When the non-moving party appears to have proffered evidence in support of its position and the district court yet awards summary judgment against the non-moving party, our review of the district court's conclusion that no genuine issue of material fact remains is difficult, if not impossible, without a clear, written explanation by the district court judge explaining his or her reasons for awarding summary judgment. With this said, we turn to the merits.

■ All-Lock's summary judgment motion required the district court to determine whether a genuine issue of material fact existed as to whether the parties intended post-

termination commissions to be a term included in their original agreement. A court's primary responsibility in interpreting a contract is to "effectuate the intent of the parties, if ascertainable." *Ford Motor Co. v. Northbrook Ins. Co.*, 838 F.2d 829, 832 (6th Cir.1988) (quoting *William C. Roney & Co. v. Federal Ins. Co.*, 674 F.2d 587, 590 (6th Cir.1982)). In contract actions, summary judgment may be appropriate when the documents and/or evidence underlying the contract are undisputed and there is no question as to intent. *P.F. Manley*, 808 F.2d at 471 (citation omitted). Normally, however, disputed issues of contractual intent are considered to be factual issues which preclude an award of summary judgment. *Id.* (citations omitted); *see also Parrett v. American Ship Building Co.*, 990 F.2d 854, 858 (6th Cir. 1993) (noting that the interpretation of ambiguous contract language is a factual issue turning on the intent of the parties).

▮ Here, for the purposes of summary judgment, the parties do not dispute that a contract existed. However, they vigorously dispute whether post-termination commissions were included as a term of the original agreement. The prevailing rule in Michigan, as stated by the state's supreme court is that, "where an express [oral] contract is entered into between the parties, but they differ as to the terms thereof, and there is evidence tending to support the claim of each of them, it is for the jury to determine what the terms of the contract were...." *Biagini v. Mocnik*, 369 Mich. 657, 120 N.W.2d 827, 828 (1963) (quoting *Geistert v. Scheffler*, 316 Mich. 325, 25 N.W.2d 241, 242 (1946)). In addition, the rule in Michigan governing disputed post-termination commissions is set forth in the seminal case of *Reed v. Kurdziel*, 352 Mich. 287, 89 N.W.2d 479, 482–83 (1958):

The relationship between agent or broker and principal being a contractual one, it is immediately apparent that whether an agent or broker employed to sell personalty on commission is entitled to commissions on sales made or consummated by his principal or by another agent depends upon the intention of the parties and the interpretation of the contract of employment, and that, as in other cases involving interpretation, all the circumstances must be considered.

The court then further explained:

It would appear that underlying all the decisions is the basic principle of fair dealing, preventing a principal from unfairly taking the benefit of the agent's or broker's services without compensation and imposing upon the principal, regardless of the type of agency or contract, liability to the agent or broker for commissions for sales upon which the agent or broker was the procuring cause, notwithstanding the sales may have been consummated by the principal himself or some other agent. In Michigan, as well as in most jurisdictions, the agent is entitled to recover his commission whether or not be [sic] has personally concluded and completed the sale, it being sufficient if his efforts were the procuring cause of the sale. In Michigan the rule goes further to provide if the authority of the agent has been canceled by the principal, the agent would nevertheless be permitted to recover the commission if the agent was the procuring cause.

*Id.* (citations omitted); *see also Fernandez v. Powerquest Boats, Inc.*, 798 F.Supp. 458, 460–61 (W.D.Mich.1992) (applying *Reed*), *aff'd without opinion*, 1993 WL 465158 (6th Cir.); *Andries v. Emhart Indus., Inc.*, 1991 WL 174228 (6th Cir.) (unpublished).

Here, the parties dispute whether they intended for post-termination commissions to be a term of their oral agreement. Nothing in the record indicates that the parties discussed this issue when Hermann and Barr formed the oral contract at their initial meeting in 1973. Hermann testified at his deposition that Terry Barr Sales was to receive a commission on "all sales to original equipment customers." However, Hermann also stated somewhat opaquely that it was his understanding that "when you work you were paid." All–Lock points to this statement as evidence that the parties did not intend for post-termination commissions to be a part of their agreement. Terry Barr testified as to the terms of the parties' agreement that:

[I]t certainly was not all that involved. Ron's thing was we didn't need an agree-

ment, a hand shake was good enough. I mean, he's been saying that for years and years and I—that's fine with me. It was based upon the circumstances, it was—I would get a commission on parts, that I would take over somecommission on parts that were already existing and new parts and I'd get a commission on the parts.

Barr also stated that the parties did not discuss the issue of post-termination commissions. All–Lock claims that this shows that post-termination commissions were not part of the original deal.

 All-Lock also claims that the parties' course of performance establishes that post-termination commissions were not included in the agreement. Michigan law provides that the parties' practical interpretation of their contract, and their course of conduct under that contract, are entitled to great weight in interpreting ambiguous provisions of the contract. *Ford Motor Co.*, 838 F.2d at 832; *Detroit Greyhound Employees Federal Credit Union v. Aetna Life Ins. Co.*, 381 Mich. 683, 167 N.W.2d 274, 275–76 (1969). Focusing on several situations in which Terry Barr Sales did not request post-termination commissions after accounts were canceled, All–Lock claims that this establishes that the parties never contemplated the payment of these commissions. However, much of the force of this argument is reduced by Terry Barr Sales' explanation of the situations. In two of the situations in which Terry Barr Sales did not demand post-termination commissions, valued employees and close friends of Terry Barr sought to split off from Terry Barr Sales and work independently, with Terry Barr's blessing. Terry Barr actually set up one former employee in an office across the hall from Terry Barr Sales. In addition, Terry Barr allowed the employees to take one account each from the All–Lock line with them. While it is true that each former employee received the commissions for those accounts, they did so with Terry Barr's approval. All–Lock did not cause Terry Barr Sales to lose these accounts. In fact, All–Lock continued to send the commission checks to Terry Barr Sales, and the checks were then forwarded to the former employees by Terry Barr Sales.

The other canceled accounts that allegedly establish that the parties did not contemplate post-termination commissions were actually for products produced by General Automotive Specialty, All–Lock's parent company, and apparently the sales and commissions for those lines were insignificant. Terry Barr gave deposition testimony that the amount of commissions that would have been received on those accounts did not warrant the effort involved in attempting to obtain them. Taking the evidence in a light most favorable to Terry Barr Sales, Terry Barr's explanation of the circumstances involved when these accounts were canceled further supports our conclusion that a genuine issue of material fact remains suitable for trial in this case.

All-Lock also points to the fact that Terry Barr Sales received commissions on inherited business at the inception of the contract. This fact, according to All–Lock shows that the parties could not have contemplated post-termination commissions. Under its theory of the case, the agent that was the "procuring cause" of those accounts should have gotten the commissions on those deals. All–Lock argues that the fact that Terry Barr Sales received commissions on those inherited accounts indicates that Terry Barr Sales knew it would not receive post-termination commissions. This argument is not conclusive either. All–Lock does not dispute that the inherited accounts had previously been handled in-house, which refutes the notion that some other agent had been the procuring cause of the sales. Further, Terry Barr received a reduced two percent commission in exchange for taking over the servicing of these accounts, as opposed to the three and one-half percent commission it received on new business. This difference in the amount of commissions received by Terry Barr Sales between inherited and new business at the inception of the contract undermines All–Lock's claim that Terry Barr Sales' acceptance of inherited business establishes that the parties did not contemplate post-termination commissions to be a term of their agreement.

In support of its claim that post-terminations commissions were part of the deal, Terry Barr Sales points to Terry Barr's

statements when Hermann terminated the agreement. Barr's deposition testimony stated:

> When Ron Hermann met me at the airport in Detroit here to tell me that he was terminating us and he asked me at that time, I told Ron life of the part. He told me 90 days, and I said something not very complimentary about it and I said Ron, life of the part. I don't know the exact sentence structure, but that's what he heard.

Terry Barr Sales also relies on the letter sent soon thereafter by Mike Smith, which asked All–Lock to "abide by the standards of our industry" and pay life of the part commissions as an indication that the parties believed that post-termination commissions were part of the original agreement. All–Lock, on the other hand, characterizes this letter as an attempt to renegotiate the original agreement to include "life of the part" commissions. We, of course, need not decide this issue. We simply note that the probative weight and effect of this letter is yet another disputed issue rendering this case unsuitable for summary judgment.

Finally, each party points to various other pieces of evidence in support of its claim, alternatively characterizing each piece as either supporting or refuting the notion that post-termination commissions were included as a term in their original agreement.[3] As is usually the case, obstructing a quick resolution of the issue is the parties' tendency to take snippets of testimony out of context, refer to small portions of documents that, when read alone, seem to support their positions, and generally to construct a story out of the facts that borders on falsity. Nevertheless, whatever the ultimate outcome, this case is particularly ill-suited for resolution at the summary judgment stage. Whether post-termination commissions were or were not part of the parties' original intent, Terry Barr Sales certainly has introduced evidence to create a genuine issue of material fact. Only by viewing the facts in a light favorable to All–Lock could the district court conclude that summary judgment was appropriate. Accordingly, we will reverse the district court's award of summary judgment in favor of All–Lock, and remand for further proceedings.

Terry Barr Sales next claims that the district court erred by striking three affidavits filed in support of its motion for reconsideration. However, in light of our conclusion that the district court's award of summary judgment in favor of All–Lock was improper, we need not address this issue.

■ Terry Barr Sales also claims that the district court erred by dismissing its unjust enrichment and promissory estoppel claims. For the purposes of summary judgment, All–Lock conceded the existence of a contract between the parties. Where the parties have an enforceable contract and merely dispute its terms, scope, or effect, one party cannot recover for promissory estoppel and unjust enrichment. *Cloverdale Equip. Co. v. Simon Aerials, Inc.*, 869 F.2d 934, 939 (6th Cir.1989). Terry Barr Sales does not dispute this principle of law, nor does it claim that it performed services not covered by the contract. *See Cascade Elec. Co. v. Rice*, 70 Mich.App. 420, 245 N.W.2d 774, 776–77 (1976) (noting an exception to the rule that equitable remedies are not available where a legally enforceable contract exists between the parties when recovery is sought for extra-contractual performance). Rather, it claims that, because All–Lock admitted the existence of a contract solely for the purposes of summary judgment, All–Lock may

---

**3.** In connection with its argument that summary judgment was improper, Terry Barr Sales objects to the district court's examination of various letters and documents submitted by All–Lock to support its summary judgment motion. The various documents all relate to the parties' negotiations after termination of the agency agreement. All–Lock characterized the documents as proposals to negotiate a new contract; Terry Barr Sales claims the documents are settlement negotiations and were therefore inadmissible under Fed. R.Evid. 408. It is not immediately apparent that the documents are one or the other. Nonetheless, a plausible interpretation of the parties' conduct after termination of the agency agreement is that all of this correspondence was directed toward settling the dispute over the "Saturn" latch account, and was not concerned with negotiating a new agreement. Accordingly, to the extent that the district court viewed the documents as evidence that the parties never had an agreement on post-termination commissions, the court erred by failing to examine the evidence in a light most favorable to the nonmoving party.

deny the existence of a contract if this Court were to reverse the district court's award of summary judgment. It does appear as if All–Lock has kept its options open, and may deny the existence of a contract on remand to the district court. Accordingly, we reinstate Terry Barr Sales' claims for promissory estoppel and unjust enrichment. Of course, if All–Lock admits to the existence of a valid contract such that whether a contract exists is not at issue for the factfinder, then it will be appropriate for the district court to dismiss Terry Barr Sales' claims for unjust enrichment and promissory estoppel at that time.

Finally, the district court dismissed Terry Barry Sales' claim brought under Mich. Comp. Laws § 600.2961 on the ground that the statute was unconstitutional under the Title–Object Clause of the Michigan Constitution. Section 600.2961 allows for treble damages upon proof that a principal intentionally failed to pay commissions. This Circuit has since held that the statute does *not* violate the Title–Object Clause of the Michigan Constitution. *See Kingsley Assocs., Inc.,* 65 F.3d at 507–08. Accordingly, we reinstate this claim as well.

In sum, we REVERSE the district court's award of summary judgment because genuine issues of material fact remain as to whether the parties intended for post-termination commissions to be included in the agreement at issue. In connection with this, we REINSTATE Terry Barr Sales' claims for unjust enrichment, promissory estoppel, and treble damages under Section 600.2961.