Arlene MAXWELL, Plaintiff,

v.

AMERITECH CORPORATION, INC., a joint venture of Michigan Bell Telephone Co., Ameritech Publishing, Inc. Ameritech mobile Communications, Inc., and Ameritech The New Media, Inc., Ameritech Sickness and Accident Disability Benefit Plan, and Ameritech Long–Term Disability Plan, Defendants.

No. 98–71121.

United States District Court, E.D. Michigan, Southern Division.

June 10, 1998.

Ralph J. Sirlin, Reosti, James & Sirlin, Detroit, MI, for Plaintiff.

Albert Calille, Lisa M. Bruno, Detroit, MI, for Defendants.

## OPINION AND ORDER

FEIKENS, District Judge.

### I. BACKGROUND

Plaintiff Arlene Maxwell (Maxwell), former employee of defendant Ameritech, filed this Employee Retirement Income Security Act of 1974 (ERISA) case in Wayne County Circuit Court in February, 1998. Defendants removed the case to this court pursuant to 28 U.S.C. §§ 1441 & 1446. Maxwell claims that defendants violated ERISA §§ 502 & 510, and 29 U.S.C. § 1140, by arbitrarily and capriciously denying her Sickness and Accident Disability Benefits (SADB) and Long Term Disability Benefits (LTDB).

This court has federal question jurisdiction pursuant to 29 U.S.C. § 1132(e) and 28 U.S.C. § 1331 because Maxwell seeks recovery of benefits under the terms of an employee welfare benefit plan sponsored by defendants and governed by ERISA, 29 U.S.C. § 1001 *et seq.* Defendants are employers or plan administrators within the meaning of ERISA, 29 U.S.C. § 1002(5). Maxwell was an employee welfare benefit plan participant within the meaning of ERISA, 29 U.S.C. § 1002(7).

Maxwell began her employment with Ameritech on January 1, 1993, with a credited service date of June 3, 1971. On March 20, 1996 Maxwell went on sick leave, initially based on troubles with high blood pressure, and later based on alleged psychiatric problems. Under the care of her psychiatrist, Dr. Lingnurkar, she was hospitalized on two occasions for psychiatric problems, and she was treated with various psychotropic medications. On September 3, 1996, Dr. Stuart Fenton, an independent medical examiner, performed a psychiatric exam on Maxwell at Ameritech's request. After noting that she had mild paranoia without significant secondary psychotic symptomatology, and that he was not entirely convinced of the veracity of her statements and answers, he stated he had the distinct impression that Maxwell functions better than she alleges she can and that she has a manipulative character. Defendants' motion for summary judgment, Exhibit A. Dr. Fenton stated that Maxwell's

anger and homicidality was convincing enough for him to continue her disability for an additional four weeks. He noted that if she had not been homicidal, he would have returned her to work that day.

Maxwell asserts that the Ameritech Benefits Department (ABD) engaged in a concerted effort to terminate her. She admits that on January 21, 1997, the ABD terminated her benefits because it had not received information from her psychiatrist necessary to justify continued payment of those benefits. Ameritech terminated Maxwell's employment on February 4, 1997. Maxwell appealed denial of her benefits. On July 23, 1997, a review committee upheld the denial. Maxwell admits that the review committee explained that the SADB Plan (Plan) provides that a claim for disability benefits must be accompanied by objective medical documentation substantiating the employee's claim that she cannot perform the duties of her job with or without reasonable accommodation. The review committee noted that Dr. Lingnurkar determined, on 12/12/96, that Maxwell could return to work on 12/31/96 with certain restrictions. However, he later asserted that Maxwell was totally disabled even though he gave no indication of functional problems needing attention other than choice of Maxwell's place of work.

The committee based its termination of Maxwell's disability benefits on the fact that after numerous requests from the Ameritech Disability Service Center (DSC) for more information, Maxwell's psychiatrist did not send the required documentation to support Maxwell's disabled status. In the documentation the DSC did receive there was no evidence to substantiate Maxwell's assertion that she suffered from a psychiatric disorder severely enough to merit disability status. Finally, the committee noted that to receive long term disability benefits (LTDB) under the Ameritech Plans, Maxwell must first have received 52 weeks of short term benefits. Because she did not meet this criterion, the committee denied her request for LTDB.

Maxwell asserts that a federal court must review Ameritech's termination/denial of disability benefits under an abuse of discretion standard because the Plan administrator has the authority to construe the terms of the Plan. She also asserts that the administrator's decisions to terminate her SADB and deny her LTDB were arbitrary and capricious. Maxwell relies on language in the Plan summary to support her contentions. The pertinent portion of the language Maxwell presents is as follows:

> To qualify for Sickness Disability benefits, you must: ... place yourself under a physician's care, be following a treatment plan reasonably designed to result in your recovery and return to work, and, as requested by the Disability Service Center, furnish medical evidence of your disability from your physician (the Company will provide forms for this certification, which must be completed and returned with all applicable medical records) ... ,

USING THE AMERITECH MANAGEMENT DISABILITY PLANS handbook, p 10. (emphasis added). Maxwell does not include in her pleadings language from page 2 of the same publication that states:

> Along with the information listed above, some details of the Plans are not included in this summary. *If there are any discrepancies between the information in this [summary plan description] and the actual Plan documents or federal tax laws and related IRS regulations, the Plan documents and such laws will be the final authority.*

*Id.* at 2 (emphasis added).

Ameritech's motion for summary judgment tracks Maxwell's report of events, but provides more detail. The company notes that, to document Maxwell's disability, it requested reports from her physician, in writing, on March 29, 1996, and April 10, 1996. On August 28, 1996, Dr. Lingnurkar submitted a statement that Maxwell might be able to return to work on November 1, 1996. On September 3, 1996, Maxwell had the appointment with Dr. Fenton, discussed above. On November 27, 1996, Dr. Lingnurkar completed a Psychiatric Provider Statement indicating that Maxwell could return to work December 31, 1996, with the single restriction that she should not work with the few people toward whom she was homicidal. On December 12, 1996, Dr. Kessler of Ameritech's

Occupational Medicine Department (OMD) reviewed Maxwell's file and determined that the medical information provided did not qualify her for disability benefits under the Plan.

On December 12, 1996 and December 27, 1996 the OMD requested by fax that Dr. Lingnurkar clarify the restriction recommended in his November 27, 1996 report. On December 27, 1996 the OMD made two calls to Dr. Lingnurkar. He did not respond to any of the faxes or phone calls. On January 3, 1997, the OMD sent Dr. Lingnurkar a letter asking for specific, current information regarding Maxwell's medical status. The letter warned that if this information was not received by January 17, 1997, Maxwell's benefits could be discontinued. The OMD did not receive any additional information from Dr. Lingnurkar, and on January 23, 1997 informed Maxwell by letter that her benefits were denied, effective January 18, 1997. This letter indicated that she had sixty days to appeal the decision to terminate her benefits, and that she must submit certain objective medical documentation to support her claim of disability.

On January 31, 1997, the OMD received a one page letter from Dr. Lingnurkar indicating that Maxwell had major depression with psychotic features and was totally disabled. He did not provide the detailed information requested in the January 3, 1997 letter (treatment plan, frequency of treatment and visits, improvements in Maxwell's condition, if any, her specific functional limitations, obstacles to her successful cure, and what accommodations would allow her to return to work without delay).

On March 13, 1997, Maxwell filed an appeal. On March 20, 1997 the Ameritech Employees' Benefit Committee (EBC) sent Maxwell a letter acknowledging receipt of her appeal, urging her to submit by April 15, 1997 additional medical documentation to support her claim, and informing her that the EBC would convene on May 19, 1997. In a letter to Maxwell on July 23, 1997, the EBC upheld denial of her benefits because of lack of objective medical documentation to support her claim of disability. The EBC also denied Maxwell's claim for LTDB for the reasons delineated above.

Before me is defendants' motion for summary judgment, asserting: (1) that the arbitrary and capricious standard applies to Maxwell's claims; (2) that Maxwell's claim that defendants violated ERISA must be dismissed because Ameritech's termination of her SADB was not arbitrary and capricious; and (3) that Ameritech's denial of Maxwell's LTDB was not arbitrary and capricious.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment must issue when there is no genuine issue as to any material fact, based on the pleadings, depositions, answers to interrogatories, admissions of the parties, and any affidavits. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Movants have the burden of proving there is no genuine issue of material fact. *Id.* Once movants meet this burden, nonmovants "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Where movants bring a motion for summary judgment, although the trial court views the evidence in a light most favorable to nonmovants, *Terry Barr Sales Agency, Inc. v. All–Lock Co.*, 96 F.3d 174, 178 (6th Cir.1996) (citation omitted), nonmovants must nonetheless present significant probative evidence to support their claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "The mere existence of a scintilla of evidence in support of the [nonmovants'] position will be insufficient; there must be evidence on which the jury could reasonably find for [nonmovants]." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

## III. ANALYSIS

█ In deciding this ERISA case, I must consider *only* the evidence presented to the Plan administrator when it made its final decision to deny benefits.

> Nothing in the legislative history [of ERISA] suggests that Congress intended that federal district courts would function

as substitute plan administrators, a role they would inevitably assume if they received and considered evidence not presented to administrators concerning an employee's entitlement to benefits. Such a procedure would frustrate the goal of prompt resolution of claims by the fiduciary under the ERISA scheme.

*Perry v. Simplicity Eng'g, a Div. of Lukens Gen. Indus., Inc.,* 900 F.2d 963, 966 (6th Cir.1990) (involving an employee's challenge to denial of disability benefits under his employer's disability plan). The evidence available to the Ameritech Employees' Benefit Committee is delineated in the Background section, above. I may not consider any additional information or evidence in this case.

■ The Supreme Court stated that an employer administrator's denial of ERISA disability benefits is reviewed *de novo,* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). The Court of Appeals for the Sixth Circuit held that "where a plan gives an administrator discretion to interpret the plan, the *arbitrary and capricious* standard still applies." *Wells v. U.S. Steel & Carnegie Pension Fund, Inc.,* 950 F.2d 1244, 1247 (6th Cir.1991) (emphasis added). Ameritech's SADB Plan grants the Ameritech Employees' Benefit Committee:

> full discretionary authority to interpret the terms of the Plan and to determine the eligibility for and entitlement to plan benefits in accordance with Plan terms. The Committee shall determine conclusively for all parties all questions arising in the administration of the Plan and any decision of the Committee shall not be subject to further review.

Ameritech SADB Plan, Defendants' Exhibit B, p 17. Thus, I must review Ameritech's termination of Maxwell's disability benefits under the arbitrary and capricious standard.

■ Under the arbitrary and capricious standard, a plan administrator's decision to grant or deny benefits is not subject to reversal if it is reasonable in light of the plan's provisions. *Miller v. Metropolitan Life Ins.*

*Co.,* 925 F.2d 979, 985 (6th Cir.1991) (involving former employee's action against trustee challenging termination of employee's benefits under employer's disability plan). Ameritech's SADB Plan specifically states that if an eligible employee fails to furnish objective medical documentation of her disability as required under the terms of the Plan, her benefits will be terminated. Ameritech SADB Plan, Defendants' Exhibit B, p 11. On a number of occasions Ameritech requested, and neither Maxwell nor her treating physician provided, objective medical documentation (including certain specific details) of her disability. In light of the Plan's provisions, the EBC's subsequent decision to terminate Maxwell's benefits was not arbitrary and capricious.

Ameritech's LTDB Plan vests the administrator (the EBC) with "the right to grant and deny initial claims for benefits under the Plan and to review on appeal claims it has denied. The [EBC] determines conclusively for all parties all questions arising in the administration of the Plan and any decision is not subject to further review." Ameritech LTDB Plan, Defendants' Exhibit O, p 10. Thus, the EBC has discretionary authority to determine eligibility for benefits and to construe the terms of the LTDB Plan, and its decisions to deny such benefits are reviewed under the arbitrary and capricious standard.

■ The Ameritech LTDB Plan provides that LTD benefits begin *only* after the employee has been disabled under the SADB Plan for 52 weeks. Ameritech LTDB Plan, Defendants' Exhibit O, p 9. Maxwell did not receive SADB for 52 weeks. Therefore, she is ineligible for LTD benefits. Under the provisions of the SADB and LTDB Plans, the EBC's termination of Maxwell's SAD benefits and denial of Maxwell's claim for LTD benefits were not arbitrary and capricious. Thus, defendants are entitled to summary judgment as a matter of law.

### A. *Conflict of Interest*

■ In her response to defendants' motion for summary judgment, Maxwell implied that the EBC might have a conflict of interest. She notes that the Supreme Court stated

.. 

that courts review an ERISA plan administrator's decisions for abuse of discretion when there is an apparent conflict of interest. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). However, she provides no evidence to support her implication that the EBC might have a conflict of interest in this case. She asks for discovery to supply this information. Sixth Circuit case law is clear that this court may only consider information available to the Plan administrator at the time it denied Maxwell's benefits. Further discovery is inappropriate. The information available in this case provides no indication that the EBC has a conflict of interest. Defendants are entitled to summary judgment as a matter of law.

## CONCLUSION

For the reasons discussed herein, I hereby grant defendants' motion for summary judgment.

**IT IS SO ORDERED.**