**Keith H. TAYLOR, Plaintiff,**

v.

**DAIMLERCHRYSLER AG, Defendant.**

**No. 00–CV–75350–DT.**

United States District Court,
E.D. Michigan,
Southern Division.

Dec. 6, 2002.

Michael H. Baniak, Evanston, IL, Jeffrey A. Pine of Baniak, Pine & Grannon, Chicago, IL, Andrew Kochanowski of Sommers, Schwartz, Silver & Schwartz, Southfield, MI, for Plaintiff.

Richard L. Mayer, Michael J. Lennon, Jeffrey M., Mark A. Hannemann, Paul T. Qualey, Debora S. Kim of Kenyon & Kenyon, New York City, Marjory G. Basile of Miller, Canfield, Paddock & Stone, Detroit, MI, for Defendant.

## *ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S STATE LAW CLAIMS*

WOODS, District Judge.

This matter having come before the Court on Defendant's motion for partial summary judgment on Plaintiff's state law claims [Doc. No. 66];

The Court having reviewed the pleadings submitted herein and determining, pursuant to E.D. MICH. LOCAL RULE 7.1(g)(2), that no oral argument is necessary to resolve the instant motion, and being otherwise fully informed in the matter;

IT IS HEREBY ORDERED that Defendant's motion for partial summary judgment on Plaintiff's state law claims pursuant to FED.R.CIV.P. 56(c) shall be, and hereby is, GRANTED.

## I. BACKGROUND

On December 7, 2000, Plaintiff, Keith Taylor ("Taylor"), instituted this patent infringement action against Defendant DaimlerChrysler A.G. ("DCAG") and Defendant Reitter and Schefenacker USA LP ("Reitter"). On January 16, 2001, Taylor filed an Amended Complaint alleging that Defendants made or sold A-pillar mounted mirrors containing a signal on its S–Class Mercedes Benz automobiles that allegedly infringe on Taylor's United States Patent Number 4,821,019 (the "'019 Patent"). Reitter has been voluntarily dismissed

from this action. *See* Order dated September 27, 2002.

In his Amended Complaint, Taylor alleges claims for: (1) patent infringement; (2) unjust enrichment; and (3) commercial misappropriation. On September 11, 2002, DCAG filed a Counterclaim for a declaratory judgment on the basis that: (1) DCAG did not infringe the '019 Patent; (2) Claims 1–7 of the '019 Patent are invalid pursuant to 35 U.S.C. §§ 102, 103 and 112; and (3) the '019 Patent is unenforceable as a result of material misrepresentations or withholding of information during the prosecution of the applications leading up to the '019 Patent.

Taylor indicated that he conceived of the idea for an automotive rear-view mirror projector assembly sometime in 1986. *See* Def.'s Ex. A, Keith Taylor dep. at 197. Later that year, Taylor hired an attorney to file a patent application for his invention. *See* Taylor dep. at 97. Taylor subsequently sought out licensees for his rear-view mirror projector assembly. It appears that Taylor engaged in extensive negotiations with several corporations, including Sheller–Globe Corporation ("Sheller–Globe"), an automotive parts supplier, and Chrysler Corporation ("Chrysler"). *See, e.g.,* Def.'s Exs. 1 and C. On July 11, 1986, Taylor and Sheller–Globe executed a Confidentiality Agreement to explore a business arrangement concerning Taylor's rear-view mirror projector assembly. *See* Plf.'s Ex. 1. Taylor ultimately executed an Exclusive License Agreement with Sheller–Globe on September 1, 1987. *See* Def.'s Ex. B. Taylor contends that he contacted Chrysler prior to retaining an attorney to prosecute his patent and prior to contacting Sheller–Globe. At his deposition, he admitted that he did not remember when in 1986 his meeting took place but stated that it occurred prior to his July meeting with Sheller–Globe. *See* Taylor dep. at 43.

In connection with Taylor's licensing negotiations with Chrysler, Taylor signed a Suggestion Agreement in order to submit for review his idea for an illuminated mirror housing. *See* Taylor dep. at 43, 48; Def.'s Ex. 1. The parties agree that Taylor signed that Suggestion Agreement on October 22, 1986. The Suggestion Agreement states, in relevant part:

I understand that you are willing to consider suggestions made to you, but because of the large number and the conditions under which such suggestions are submitted to you, you have established a uniform policy in regard thereto and that a statement of this policy is printed on the reverse side of this sheet. The policy requires that I accept the following specific conditions before consideration of my suggestion:

1. No suggested information is received in secrecy or confidence regardless of any marking thereon to the contrary.

2. No obligation of any kind is assumed by, nor may be implied against Chrysler Corporation for any claimed or actual use by it of all or any part of the suggestion notwithstanding any notice to the contrary on any information supplied to Chrysler Corporation. The only obligation which Chrysler Corporation shall have is that which is expressed in a formal written contract that may be executed by the parties after Chrysler Corporation has evaluated the information furnished under this Agreement.

3. I do not hereby give Chrysler Corporation any rights under any patents, trademarks or copyrights I now have or may later obtain covering my suggestion, but I do hereby in consideration of the examination of my suggestion release it from any liability in connection with my suggestion or liability because of use of any portion thereof except such

liability as may arise under valid patents, trademarks or copyrights now or hereafter issued or obtained. . . .

Def.'s Ex. 1, Suggestion Agreement at p. 1.[1]

After Sheller–Globe executed a licensing agreement with Taylor in 1987, Sheller–Globe made efforts to market Taylor's rear-view mirror projector assembly in the automotive industry. *See, e.g.,* Def.'s Exs. D–E. On April 11, 1989, the United States Patent and Trademark Office issued the '019 Patent to Taylor.[2] On August 22, 1989, Sheller–Globe terminated its agreement with Taylor, expressing that it was unable to obtain commercial interest in Taylor's rear-view mirror projector assembly. *See* Def.'s Ex. D.

Taylor re-contacted several Chrysler employees in order to spark interest in his rear-view mirror projector. *See, e.g.,* Def.'s Ex. F. Chrysler repeatedly indicated it did not have any interest in pursuing Taylor's rear-view mirror projector. *See* Def.'s Exs. G and H. Chrysler's senior staff counsel, Mark Calcaterra ("Calcaterra"), was unaware that Taylor had already signed a Suggestion Agreement and thus submitted one for Taylor to sign prior to passing along Taylor's suggestion. *See* Def.'s Ex. I. As a result, Taylor signed a second Suggestion Agreement and included his patent as well. *See* Def.'s Ex. J. Subsequently, Calcaterra indicated that Chrysler was not interested in his rear-

view mirror projector assembly. *See* Def.'s Ex. K.

Notwithstanding Chrysler's repeated rejection of Taylor's rear-view mirror projector assembly, Taylor again contacted Chrysler in 1991 in an effort to interest Chrysler. *See* Def.'s Ex. L.[3] On September 5, 1997, Taylor again contacted Chrysler concerning his patent. *See* Def.'s Ex. M. By letter dated February 17, 1998, Chrysler indicated that it was not interested in Taylor's patent. *See* Def.'s Ex. N.

Currently before the Court is DCAG's motion for partial summary judgment on Taylor's state law claims. DCAG contends that Taylor explicitly waived his right to proceed on these state law theories of recovery by virtue of his October 22, 1986, Suggestion Agreement. Taylor contends that DCAG cannot avail itself of Taylor's Suggestion Agreement.

## II. STANDARD OF REVIEW

Motions for summary judgment require the Court to look beyond the pleadings and evaluate the facts to determine whether there is a genuine issue of material fact that warrants a trial. Federal Rule of Civil Procedure 56 mandates the entry of summary judgment if all the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S.

---

1. The reverse side of the Suggestion Agreement states, in relevant part:

   "It is not necessary to have a patent, trademark, or copyright protection on a suggestion before submitting it to us. However, our obligations shall be only those which are set forth in a written agreement or those based on the infringement of a valid patent, trademark, or copyright.

   . . . . [I]f you have merely filed a patent application and have not yet been issued a patent, we must treat your suggestion as

   unpatented and must, in such cases, receive the Agreement before considering your suggestion."

2. Taylor filed his patent application on January 7, 1987. *See* Plf.'s Ex..2.

3. Taylor's March 18, 1991, letter acknowledges that "[f]or the past four years, we have relentlessly attempted to bring our mirror project to the attention of the Chrysler design staff." Def.'s Ex. L.

317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party has the burden of showing that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. 2548. Thus, this Court determines "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Terry Barr Sales Agency, Inc. v. All–Lock Co., Inc.,* 96 F.3d 174, 178 (6th Cir.1996) (citations omitted). This Court does not weigh the evidence, but determines whether there is a genuine issue for trial, viewing the record as a whole and viewing all the facts in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 578, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

In order to avoid summary judgment, the opposing party must have set out sufficient evidence in the record to allow a reasonable jury to find for him at trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256, 106 S.Ct. 2505. *Accord, Hunter v. Caliber Sys., Inc.,* 220 F.3d 702, 709 (6th Cir.2000)(finding that the mere existence of a scintilla of evidence is insufficient to avoid summary judgment). Summary judgment is appropriate if the evidence favoring the nonmoving party is merely colorable or is not significantly probative. *See Chao v. Hall Holding Co., Inc.,* 285 F.3d 415, 424 (6th Cir.2002).

## III. DISCUSSION

■ DCAG contends that partial summary judgment is appropriate on Taylor's claims under Michigan law as a result of an October 22, 1986, Suggestion Agreement executed by Taylor. *See* Def.'s Ex. 1. DCAG argues that the Suggestion Agreement explicitly limits DCAG's liability to claims that Taylor may assert under federal patent, trademark or copyright laws. As such, DCAG requests this Court to dismiss Taylor's unjust enrichment and commercial misappropriation claims, brought under Michigan law.

The Suggestion Agreement provides, in relevant part:

> I do not hereby give Chrysler Corporation any rights under any patents, trademarks or copyrights I now have or may later obtain covering my suggestion, but *I do hereby in consideration of the examination of my suggestion release it from any liability in connection with my suggestion or liability because of use of any portion thereof except such liability as may arise under valid patents, trademarks or copyrights now or hereafter issued or obtained....*

Suggestion Agreement at ¶ 3 (emphasis added). The Suggestion Agreement also specified that "[Chrysler's] obligations shall be only those which are set forth in a written agreement or those based on the infringement of a valid patent, trademark, or copyright." Suggestion Agreement at p. 2.

> Taylor recognizes, in his response, that: In a much publicized transaction in 1998, DaimlerChrysler merged with various Chrysler entities in the United States to create DaimlerChrysler, AG. (**Exhibit 10**, excerpts from Merger Prospectus filed with the Securities and Exchange Commission). As a result of the merger, DaimlerChrysler AG, "a newly formed AKTIENGESELLSCHAFT organized and existing under the laws of the Federal Republic of Germany ..." was formed.

Plf's Br. at 4 (emphasis in original).[4] As the Securities and Exchange Commission filing indicates, "As a result of the Transactions, the business of DaimlerChrysler AG and its subsidiaries will be the businesses currently conducted by Chrysler and Daimler–Benz." Plf.'s Ex. 10.

Taylor argues that DCAG should be deemed a third-party beneficiary that cannot benefit from the terms of the October 1986 Suggestion Agreement. Taylor claims that because the "Suggestion Agreement speaks only of Chrysler Corporation" and not DaimlerChrysler AG, there is no evidence that DCAG is entitled to invoke the Suggestion Agreement. *See* Plf.'s Br. at 5–6.[5] The Court rejects Taylor's specious argument. The SEC filing, supplied by Taylor, explicitly reflects that DCAG was formed as a result of the merger between Chrysler Corporation and Daimler–Benz. *See* Plf.'s Ex. 10. It is disingenuous to suggest that confusion exists as to whether DCAG can enforce the terms of the Suggestion Agreement. Through the merger, DCAG has assumed, in essence, the rights and obligations of Chrysler. This includes the benefits and burdens imposed by the Suggestion Agreement.[6]

■ Taylor next contends, in conclusory fashion, that the Suggestion Agreement should fail for lack of consideration. Tay-

lor claims that he disclosed his invention prior to signing the Suggestion Agreement and that no consideration was given. The Suggestion Agreement unequivocally and repeatedly indicates that a suggestion will not be considered absent a signed Agreement. *See* Suggestion Agreement at pp. 1–2. Taylor concedes that he signed Chrysler's Suggestion Agreement because he wanted to have a meeting with Chrysler and was told that it would not happen absent a signed agreement. *See* Taylor dep. at 49. As such, Taylor's testimony aptly illustrates the necessary consideration: the ability to receive Chrysler's consideration for possible business applications of Taylor's rear-view mirror assemblies.

■ Taylor also contends that any information he divulged between June 1986 and October 1986 is not covered by the Suggestion Agreement he signed in October 1986. At his deposition, Taylor indicated that he could not recall when he first met with a Chrysler representative. *See* Taylor dep. at 43. Taylor claimed, however, that he met with Chrysler prior to meeting anyone at Sheller–Globe. *See* Taylor dep. at 46. Taylor's deposition testimony also reflects that the substance of any conversations prior to the October 1986 Suggestion Agreement involved his inquiries re-

---

**4.** The SEC filing indicates that DaimlerChrysler AG is the successor corporation to Daimler–Benz Aktiengesellschaft.

**5.** Taylor relies on the portion of the Suggestion Agreement which states that the "Chrysler Corporation ... also includes its domestic and foreign subsidiary, controlled, and associated companies." Suggestion Agreement at p. 1.

**6.** The Court is not entirely convinced that the law covering third-party beneficiaries to a contract, MICH. COMP LAWS § 600.1405, is applicable to DCAG, a successor to Chrysler. Assuming such analysis is appropriate, the Court is satisfied, based on the record in this

case, that the Suggestion Agreement confers the same rights to DCAG as it did to Chrysler. By its terms, the Suggestion Agreement releases not only Chrysler, but also "its domestic and foreign subsidiary, controlled *and associated companies.*" Suggestion Agreement at p. 1 (emphasis added). This language is sufficiently broad in scope to include Chrysler's successor, DCAG. *See* Plf.'s Ex. 10 ("As a result of the Transactions, the business of DaimlerChrysler AG and its subsidiaries will be the businesses currently conducted by Chrysler and Daimler–Benz."). Thus, contrary to Taylor's suggestion, the Suggestion Agreement, viewed objectively, explicitly covers associated companies, such as Chrysler's successor, DCAG.

garding "who ... I [would] talk with ... the design staff, the design office" to discuss his invention. *See* Taylor dep. at 83–85. Taylor asserts that the gist of his conversation was that he told Chrysler about his concept, and that it should be simple to produce, Taylor dep. at 89–92. He testified that he "was not clear" on whether he showed Chrysler drawings or detailed how his invention worked prior to signing the Suggestion Agreement. *See* Taylor dep. at 91–92. Taylor's equivocal testimony is not sufficient to constitute evidence that he did, in fact, reveal any specific information prior to signing the Suggestion Agreement.[7] Additionally, the Suggestion Agreement signed by Taylor explicitly states that "[n]o suggestion information is received in secrecy or confidence regardless of any marking thereon to the contrary." Suggestion Agreement at ¶ 1.

Furthermore, there is no record evidence to illustrate that Chrysler entertained or evaluated Taylor's invention prior to his signing the Suggestion Agreement. The record evidence submitted by DCAG shows that Chrysler repeatedly declined to enter a business arrangement—both prior and subsequent to Taylor's acquisition of the '019 patent for his invention. Moreover, the Suggestion Agreement states that all common law claims are waived, without providing any exceptions for disclosures that may have been made prior to executing the Suggestion Agreement. *See* Suggestion Agreement at ¶ 3.

In sum, DCAG has satisfactorily established that the unambiguous Suggestion Agreement, signed by Taylor, forecloses his right to proceed on any Michigan common law claims. As such, the Court finds that DCAG is entitled to partial summary judgment on Taylor's claims for unjust enrichment and commercial misappropriation.

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion for partial summary judgment on Plaintiff's state law claims is GRANTED.

IT IS SO ORDERED.

---

7. Additionally, as another court aptly expressed under similar factual circumstances, "plaintiff's right to rely [on a confidential relationship allegedly formed prior to the execution of the release] was effectively terminated when the waiver form was first presented to him, for at that point he was put on notice of defendant's position and could have taken appropriate action. This he did not do; instead, he signed the first waiver then and similar ones on two subsequent occasions." *Kearns v. Ford Motor Co.*, 203 U.S.P.Q. 884, 888 (E.D.Mich.1978). This equally applies in the present case and forms another basis for rejecting Taylor's argument.