## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 36857

| | | |
|---|---|---|
| **R. DREW THOMAS,** | ) | |
| | ) | |
| **Plaintiff-Appellant,** | ) | **Boise, February 2011 Term** |
| | ) | |
| **v.** | ) | **2011 Opinion No. 39** |
| | ) | |
| **RONALD O. THOMAS, ELAINE K.** | ) | **Filed: March 18, 2011** |
| **THOMAS and THOMAS MOTORS, INC.,** | ) | |
| **an Idaho corporation,** | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **Defendants-Respondents.** | ) | |
| _____ | ) | |

Appeal from the District Court of the Third Judicial District of the State of Idaho, Gem County.  Hon. Juneal C. Kerrick, District Judge.

The decision of the district court is <u>affirmed</u>.  No attorney fees on appeal.  Costs are awarded to Respondents.

Morrow & Fischer, PLLC, Nampa, for appellant.

H. Ronald Bjorkman, Emmett, for respondent Ronald O. Thomas.

Hepworth, Janis & Brody, Boise, for respondents Elaine K. Thomas and Thomas Motors, Inc.

_____

W. JONES, Justice

### I. NATURE OF THE CASE

This case revolves around an alleged agreement between R. Drew Thomas (Drew) and his father, Ron Thomas.  Drew alleges that he left his job as a sales manager at another car dealership to work for Thomas Motors, Ron's newly-purchased car dealership, at a lesser salary because Ron orally promised Drew that Ron would give Thomas Motors to Drew upon Ron's retirement.  Drew filed suit in the district court against Ron, Ron's wife Elaine, and Thomas Motors (Respondents) alleging five different counts including breach of the oral contract and unjust enrichment.  The district court granted summary judgment on the unjust-enrichment claim because it determined that an express enforceable employment contract covered the same subject matter.  Upon a second motion for summary judgment, the court dismissed the oral contract

1

claim, holding that there was a material price term in the oral contract which was never agreed upon and therefore the contract was not enforceable.

Drew argues on appeal that the district court erred in granting the first motion for summary judgment on the unjust-enrichment claim for two reasons: (1) it erred in determining there was an express oral employment contract separate and apart from the promise to convey Thomas Motors; and (2) it prematurely dismissed the unjust-enrichment claim considering the court's later determination that the oral contract to transfer Thomas Motors was not enforceable. We hold that although the district court prematurely dismissed the unjust-enrichment claim because it had not yet determined that any contract was enforceable, as a matter of law the subsequent written contracts entered into by the parties were enforceable, superceded the oral contract and covered the same subject matter as the unjust enrichment claim, and thus we affirm the ruling of the district court dismissing the unjust-enrichment claim.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In the fall of 1997, Drew began working at Thomas Motors in Emmett, Idaho. For approximately eight years prior, Drew had been employed as a salesperson of new and used cars at Lanny Berg Chevrolet in Caldwell, Idaho, the last six months of which he was employed as a manager of new-car sales. Drew states that during the summer of 1997, his father Ron approached Drew about the prospect of coming to work at Ron's newly-purchased car dealership. Drew states that Ron requested Drew leave his job at Lanny Berg and apply his knowledge and experience to establish Ron's dealership, in exchange for a salary and a promise to give Thomas Motors to Drew upon Ron's retirement. Drew stated that he "undertook operation and management of Thomas Motors because my father promised that if I did so, the business would be mine." This agreement was not reduced to writing.

It seems that both parties agree that there was discussion regarding payment of some amount of money by Drew to Ron and Elaine once Drew was to take over the dealership. Drew understood that he would "have to pay something for it." Drew contended that this payment was essentially a retirement payout so that his parents would have enough to live on, and that the transfer of Thomas Motors was not contingent upon it; however, Respondents claimed that this

2

payment was a price term included in the contract to transfer Thomas Motors which was never agreed upon.[1]

From the time Drew began his employment with Thomas Motors, in Fall 1997, until Summer 2000, Drew spent twelve- to fourteen-hour days, six or seven days a week, working at the dealership. He and his co-workers state that he filled several roles in the dealership, as general manager, sales manager, inventory manager, finance manager, and insurance manager, which normally would have been performed by separate full-time employees. Drew contends that the salary he received was well below the market rate paid to other general managers.[2] His starting salary at Thomas Motors, of $2,500 a month, was less than he was making at Lanny Berg, but Drew did receive incremental raises after he had been employed at Thomas Motors for a year. By 1999, Drew testified that he was receiving "close" to what his previous salary at Lanny Berg had been.

Thomas Motors lost money seven of the nine years that Drew worked there. Drew attributes these losses to Ron's mismanagement of the company's finances, and Respondents attribute them to Drew's management. Drew states that he became dissatisfied with the financial state of Thomas Motors in 2000. He testified that he agreed to proceed with management of Thomas Motors based on Ron's promise to convey the dealership to him, and in August 2000, Ron assembled the staff and notified them that Drew would be making the management decisions from that time forward. At this time, Drew requested written contracts to be drawn up to "memorialize" Drew's agreement with Ron to transfer the business. Three separate contracts

---

[1] At the time of the first summary judgment, the court found that there was at least conflicting evidence regarding whether a price term existed in the contract. At the time of the second summary judgment, the court found that the contract did include a price term, and because the parties never agreed on a set price, that term was not sufficiently definite and therefore the contract was unenforceable. While the Amended Notice of Appeal (as well as the original Notice of Appeal) contains an issue regarding whether the district court erred in granting the second summary judgment based on the existence of a price term that was never agreed upon, Drew does not provide argument on this point and thus the Court will not address it. I.A.R. 35(a)(6).

[2] In his affidavit, Drew states:

> During the years 1997 through 2006, sales managers at smaller and medium size dealerships in the Treasure Valley were paid an annual salary from $60,000 to $100,000 and finance and insurance managers were paid an annual salary of $60,000 to $150,000. During the same period, general managers at smaller and medium size dealerships in the Treasure Valley were paid an annual salary from $100,000 to $200,000. Therefore, although I ultimately received an annual salary from Thomas Motors in the amount of about $60,000, I was being paid within the salary range paid to sales manager, not general managers. I had much more responsibility and was performing many more functions than a sales manager would perform.

were drafted together: a Management Contract, an Agreement for Purchase and Sale of Business, and a Commercial Lease and Purchase Agreement. These contracts were attached as exhibits to both Drew's Deposition and Ron's Affidavit in Support of Summary Judgment. Drew alleges the contracts were not signed by Ron and his wife Elaine because he did not see a copy of them signed until after this litigation began, offering these allegations as circumstantial evidence that the contracts were never executed. Drew further contends that the terms of the written contracts were never followed by the parties and that his father made representations to Drew that he would not sign or follow the contracts as additional circumstantial evidence that the contracts were not entered into. He also contends that he was not given all the responsibilities he was promised under the Management Contract. Drew states that his efforts in hiring full-time employees after this time, including a finance and insurance manager, allowed Thomas Motors to avoid foreclosure and increase revenue, culminating in Chrysler awarding Thomas Motors a "five-star" rating normally awarded to only larger dealerships.

In 2006, Thomas Motors was sold to a group of investors headed by Mr. Bill Buckner. The deal included both the sale of some surrounding real property owned personally by Ron and his wife Elaine, as well as Thomas Motors itself, with a closing price of $2,900,000. At that time, Drew states that Thomas Motors owed $200,000 on a flooring line of credit that had been obtained through Key Bank. Drew was not notified of the sale of Thomas Motors.

Drew filed a Verified Complaint and Demand for Jury Trial against Ron, Ron's wife Elaine, and Thomas Motors on June 21, 2006, alleging five counts: (1) breach of (oral) contract, (2) breach of the covenant of good faith and fair dealing, (3) quasi-contract, (4) breach of (written) contract (in the alternative), and (5) fraud. Drew's quasi-contract claim rested on the same oral contract as the first count, but relied on the benefit Drew's employment conferred on Ron. On July 24, 2007, the Respondents filed a motion for summary judgment on all five counts. In its Order on that motion, the district court denied summary judgment on the first two counts of breach of oral contract and breach of the covenant of good faith and fair dealing, but granted summary judgment on the remaining three counts of quasi-contract, breach of written contract (in the alternative) and fraud. The court rejected the Respondents' argument that the oral contract lacked definite material terms at that time, finding:

> the agreement as alleged by Plaintiff in Paragraph 12 of his Affidavit in Opposition to the Motion for Summary Judgment—in consideration of Plaintiff

4

leaving his employment at Lanny Berg and contributing his efforts and experience to building Thomas Motors, Defendants promise to transfer Thomas Motors upon the retirement of Ronald Thomas—is supported by sufficient evidence in the record to preclude summary judgment dismissing the claim for breach of that contract.

The court also rejected the Respondents' argument that the oral contract was invalid under the statute of frauds. It found first that the contract could have been performed within a year because Ron could have retired within one year from when the contract was entered into, and second that the contract did not involve real property, and therefore the statute of frauds was not implicated as a matter of law. In granting summary judgment on the quasi-contract claim at issue in this appeal, the court found that unjust enrichment could not apply because an express contract governed the agreement. It stated:

> Here, Plaintiff essentially seeks additional compensation for the services he performed for Thomas Motors while employed there based on the assertion that, pursuant to another agreement, he agreed to accept less compensation for his services. Since the uncontroverted evidence establishes that the parties had an express employment agreement pursuant to which Plaintiff was paid a salary, including one or more raises during his employment, the Court finds that it would be improper to change the terms of that employment agreement by application of the doctrine of quasi-contract. Plaintiff's assertion that he agreed to go to work for Thomas Motors at a reduced salary in consideration for Defendants' promise to transfer the business should stand or fall based upon the jury's determination of his express contract claim in Count I.

In granting summary judgment on the written contract claim, the court found that taking the facts in a light most favorable to Drew led to the inference that either the contract was unenforceable because it was never signed, or that Drew failed to satisfy a condition precedent to the Respondents' obligation to sell the dealership, which was that he obtain an exclusive Chrysler franchise before closing, and thus Respondents could not have breached the contract when they sold it to another buyer in 2006.[3]

---

[3] Paragraph 19.1 of the Purchase and Sale Agreement provides:

> Buyer shall have obtained from Franchisor, prior to the Closing Date, an exclusive franchise to sell new Chrysler, Dodge, Plymouth and Jeep motor vehicles in the same geographical area as Seller's current franchise in Emmett, Idaho (as evidenced by the issuance to Buyer by Franchisor of an appropriate Dealership Sales and Service Agreement, and the approval of Buyer as the publicly-owned Dealer-Operator of the franchise), and Buyer agrees to use its best reasonable efforts to obtain that franchise.

Paragraph 2.1 of the Purchase and Sale Agreement established a closing date of September 1, 2001.

After further discovery including a second deposition of Drew,[4] on March 18, 2008, Respondents moved for partial summary judgment, asking the court to find that any alleged agreement between the parties to transfer Thomas Motors did not involve the transfer of real property and the court granted the same. On April 9, 2009, Respondents moved for summary judgment on Drew's remaining counts of breach of an express oral contract (Count I) and breach of the implied covenant of good faith and fair dealing (Count II). The court granted the motion, finding that the parties did not enter into a valid enforceable contract because (1) a material term of the alleged agreement was for Drew to pay a monetary price for the business and (2) the parties never reached an agreement on the price or an objective means for determining the price. After Respondents filed a motion for attorney fees and costs under I.C. § 12-120(3), they were awarded $2,334.81 in costs and $115,749.20 in attorney fees, totaling a judgment of $118,084.01.

Drew initially filed his notice of appeal from the second order granting summary judgment on August 27, 2009. The district court entered a final judgment on March 22, 2010.[5] Drew filed an amended notice of appeal from that final judgment on January 27, 2011.

### III. ISSUES ON APPEAL

1.  Whether there was a genuine issue of material fact as to the existence of an express employment agreement separate and apart from the promise to convey Thomas Motors.

2.  Whether the district court erred in granting summary judgment on the unjust-enrichment claim before it had found that the express contract in Count I was enforceable.

3.  Whether the district court abused its discretion in the amount of attorney fees it awarded to Respondents.

4.  Whether either party should be awarded attorney fees on appeal.

### IV. STANDARD OF REVIEW

In reviewing the district court's grant of summary judgment, this Court's standard of review is the same as the standard used by the trial court in ruling on the motion for summary judgment. *Infanger v. City of Salmon*, 137 Idaho 45, 46–47, 44 P.3d 1100, 1101–02 (2002). "All disputed facts are to be construed liberally in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-

---

[4] The second deposition was taken on June 26, 2007.

[5] This is the filing date. The judgment was not sent to this Court until January 25, 2011.

6

moving party." *Kiebert v. Goss*, 144 Idaho 225, 227, 159 P.3d 862, 864 (2007). Summary judgment is appropriate if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Id.*; I.R.C.P. 56(c).

Once a final judgment in a case is appealed, the appeal is deemed to include "all interlocutory judgments and orders entered prior to the judgment, order or decree appealed from," and thus Drew may properly challenge the district court's grant of the first summary judgment, even though it was not a final order. I.A.R. 17(e); *Umphenour v. Yokum*, 118 Idaho 102, 103, 794 P.2d 1158, 1159 (Ct. App. 1990).

## V. ANALYSIS

Drew's arguments on appeal center on his claim of "quasi-contract." The term "quasi-contract" is used interchangeably with "unjust enrichment" or "contract implied-in-law." *Cannon Builders, Inc. v. Rice*, 126 Idaho 616, 623, 888 P.2d 790, 797 (Ct. App. 1995). Each term refers to the same claim by Drew of "quasi-contract."

**A.     There Was a Genuine Issue of Fact Regarding Whether the Oral Promise to Convey Thomas Motors Was Part of the Same Oral Contract that Governed Drew's Employment.**

In granting summary judgment on Drew's unjust-enrichment claim, the court stated that there was "uncontroverted evidence . . . that the parties had an express employment agreement, pursuant to which Plaintiff was paid a salary." It further clarified that allowing the unjust-enrichment claim based on the promise to transfer Thomas Motors would "have the potentially pernicious effect of permitting parties to change the terms of an otherwise enforceable express contract by asserting a claim for unjust enrichment based upon an entirely separate unenforceable promise that supposedly altered or modified the terms of the express contract." Thus, the court found that there were two different contracts, one in which Drew was paid his salary, and a separate one in which Ron allegedly promised to transfer Thomas Motors. Respondents' arguments on appeal echo this view, stating that "Plaintiff is now, in retrospect, unhappy with the salary he received for his services to Thomas Motors, and seeks to re-write his employment contract." Respondents also state that "[t]here is no dispute that Plaintiff had an express employment contract with Thomas Motors pursuant to which he agreed to work at Thomas Motors, and Thomas Motors agreed to pay him for such services." However, Drew's

7

position has always been that there was one single contract in which Drew exchanged his services as an employee and his knowledge and experience in managing a car dealership, in return for both a reduced salary *and* the promise that Ron would transfer Thomas Motors to him upon his retirement.

In order to grant summary judgment, the court must find that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." I.R.C.P. 56(c). "This Court will liberally construe the record in favor of the party opposing the motion for summary judgment and will draw all reasonable inferences and conclusions in favor of that party." *Arreguin v. Farmers Ins. Co. of Idaho*, 145 Idaho 459, 461, 180 P.3d 498, 500 (2008).

Respondents argue that the evidence shows that Drew's salary "was not tied in any way to the eventual transfer of Thomas Motors to Plaintiff [Drew]." Respondents cite a portion of Drew's deposition describing discussions between Drew and Ron regarding Drew's starting salary of $2,500.[6] Respondents also note that the discussions included talk of eventual raises, which Drew did receive. Thus, Respondents conclude that pursuant to an express employment contract, "Plaintiff was actually paid for his employment services on the terms that he had agreed to."

---

[6] The portion of Drew's deposition that Respondents cite is:

> Q. Okay. And tell me about any discussions you had before the day you actually joined about what salary you would make.
> A. He told me he would pay me 2,500 bucks a month.
> Q. When were those discussions, how close in time to when you actually started?
> A. Probably a month or so because I wouldn't have committed without knowing, a month or so prior. He knew that it was less money at the time and that it would be a lot of work. And it was, but that it would be worth it and it would pay off on me.
> Q. He knew it would be less money? How would he know that?
> A. Because he knew what I was making at Lanny Berg.
> Q. I assume the only way he could know that is you telling him?
> A. Um-hmm.
> Q. Is that right?
> A. Yes.
> Q. So you told him how much you were making at Lanny Berg?
> A. More than once. He was very proud of me for that.
> Q. And when -- in your mind was it him that decided the $2,500 a month salary?
> A. Um-hmm.
> Q. Is that yes?
> A. Yes, that is.

The evidence here is at least sufficient to create an issue of fact as to whether the promise to convey Thomas Motors was part of the same oral contract as the one that established Drew's salary. Drew's affidavit and deposition testimony continually state that the reason he left his job at Lanny Berg and came to work for Thomas Motors was that he expected to receive Thomas Motors upon his father's retirement. He stated that he took a reduced salary because of this promise, leading to an inference that the amount of his salary was tied to the promise to convey Thomas Motors. The fact that Drew received a salary does not mean that a promise to convey or transfer the business could not also be part of the same contract if supported by the affidavits and deposition testimony. Further, the price term that the district court later found to exist in its second summary-judgment order, in which Drew would pay somewhere from $3,000 to $5,000 a month to the Respondents once Ron retired, was also alleged by Drew to be part of the same oral contract. Construing the facts here in a light most favorable to Drew, as the Court is required to do, leads to an inference that the promise to convey Thomas Motors was part of the same contract that governed Drew's salary. However, this determination does not affect this Court's ultimate conclusion, because we hold that the written contracts superceded any oral contract.

**B.    While the District Court Prematurely Granted Summary Judgment on Drew's Unjust-Enrichment Claim, the Judgment of the District Court is Affirmed Because the Written Contracts Are Enforceable and Cover the Same Subject Matter as the Unjust-Enrichment Claim.**

Recovery cannot be had for unjust enrichment where there is an express contract covering the same subject matter. *Blaser v. Cameron*, 121 Idaho 1012, 1017, 829 P.2d 1361, 1366 (Ct. App. 1991). "The reason for this rule presently is that the remedies for breach of an express contract, whether by law or by express agreement, afford adequate relief." *Triangle Min. Co., Inc. v. Stauffer Chem. Co.*, 753 F.2d 734, 742 (9th Cir. 1985). However, an express contract cannot provide adequate relief when it is not enforceable. Thus, this Court has stated that "only when the express agreement is *found to be enforceable* is a court precluded from applying the equitable doctrine of unjust enrichment in contravention of the express contract." *Wolford v. Tankersley*, 107 Idaho 1062, 1064, 695 P.2d 1201, 1203 (1984) (emphasis added); *see also Bates v. Seldin*, 146 Idaho 772, 776–77, 203 P.3d 702, 706–07 (2009).

Respondents argue that a federal case from the district of Maine, *Ingram v. Rencor Controls, Inc.*, 256 F. Supp. 2d 12 (D. Me. 2003), should be applied here to preclude Drew's claim for unjust enrichment based on the existence of an express contract. In that case, an

employee who began work with his employer in 1994 allegedly entered into an oral agreement with the employer in 1997 in which he was to receive a stock transfer, promotion, and 50% increase in salary in exchange for his staying with the corporation after the departure of one of its two shareholders. *Ingram*, 256 F. Supp. 2d at 14. The employer argued that the stock transfer was not a part of the agreement. *Id.* In citing the Sixth Circuit's opinion in *Terry Barr Sales Agency v. All-Lock Co.*, 96 F.3d 174 (6th Cir. 1996), the court held that "if the overall contract was found to be enforceable, [but] the parties 'merely dispute [the] terms, scope or effect' of a particular provision, a claim could not be made for unjust enrichment." *Ingram*, 256 F. Supp. 2d at 24 (quoting *Terry Barr*, 96 F.3d at 181). The court further reiterated that it could not allow recovery under unjust enrichment "[w]here the parties have made a contract for themselves, covering the whole subject matter." *Id.* (citation omitted).

The district court here never made a finding or determination that the express oral contract in Count I, regarding the oral promise to convey Thomas Motors, was enforceable. The district court found that Drew's assertions under his unjust-enrichment claim, that he provided a benefit to Respondents in reliance on the promise to transfer Thomas Motors, "should stand or fall based upon the jury's determination of his express contract claim in Count I." However, the court never determined that the express contract in Count I was enforceable. In fact, it subsequently found in its second summary judgment that the contract was unenforceable. In the *Ingram* case cited by Respondents, the court relied on authority stating that only if the contract is "found to be enforceable" does it bar an unjust-enrichment claim. *Ingram*, 256 F. Supp. 2d at 24 (quoting *Terry Barr*, 96 F.3d at 181). This is the rule in Idaho as well. *Wolford*, 107 Idaho at 1064, 695 P.2d at 1203 ("[O]nly when the express agreement is found to be enforceable is a court precluded from applying the equitable doctrine of unjust enrichment in contravention of the express contract.").

Idaho Rule of Civil Procedure 8(a)(1) allows a plaintiff to plead in the alternative. I.R.C.P. 8(a)(1) ("Relief in the alternative or of several different types may be demanded."). As one court stated, "had both Plaintiffs and Defendants . . . unequivocally admitted the existence and enforceability of all provisions of the [contract], the Court would have to dismiss Plaintiffs' unjust enrichment claim." *Brown & Brown, Inc. v. Cola*, 2010 WL 3928589, at *30 (E.D. Pa. October 4, 2010). However, because the parties disputed the facts underlying the enforceability of the express oral contract in Count I, and the district court in fact later found the contract to be

unenforceable in its second summary-judgment order, the district court was premature in dismissing the unjust-enrichment claim at the first summary judgment. *See Ridgeline Constructors, Inc. v. Elmira Glass Tech. Corp.*, 583 N.Y.S.2d 633, 635 (N.Y. App. Div. 1992) ("With respect to the unjust enrichment claim, because recovery is dependent upon how the contract claim is resolved, it is . . . not capable of disposition on a summary judgment motion."); *Fed. Ins. Co v. Westside Supply Co.*, 590 S.E.2d 224, 232 (Ga. Ct. App. 2003) (same). Thus, because there was never any determination that the express oral contract in Count I was enforceable, and it was in fact found to be unenforceable in the second summary-judgment order, the district court erred in granting the first summary judgment based on the existence of an enforceable contract covering the same subject matter.

However, we determine that the written contracts are enforceable as a matter of law, and thus we affirm the decision of the district court dismissing the unjust-enrichment claim on an alternative basis. *Johnson v. McPhee*, 147 Idaho 455, 466, 210 P.3d 563, 574 (2009) ("We may affirm the district court if we conclude that summary judgment on this cause of action would have been proper on an alternative basis.") The written contracts were entered into by the parties in 2000 and thereafter governed both Drew's salary and the promise to convey Thomas Motors. Drew disputes when and if these contracts were signed by his mother. Drew stated in his affidavit that when he signed the contracts in September 2000, there were no other signatures on the documents. Respondents state that Ron and Elaine signed and dated the contracts in September 2000, and the contracts reflect as much. The district court dismissed the claim Drew brought against the Respondents for breach of the written contracts, specifically the Purchase and Sale Agreement, determining that the contract was either unenforceable because it was not signed by Ron and Elaine as alleged by Drew, or there was no breach because Drew failed to satisfy a condition precedent to Ron's obligation to transfer Thomas Motors, that he obtain a franchise.

The Management Contract and the Purchase and Sale Agreement entered into in September 2000, while not specifically considered by the district court in dismissing the unjust-enrichment claim, provide the terms and conditions of Drew's employment and the transfer of Thomas Motors. The Management Contract provides a set monthly salary of $5,000 and states that Drew's dividends will be applied toward the purchase price of the dealership as provided for

11

under the conditions of the Purchase and Sale Agreement.[7]  Because this Court finds the Management Contract and Purchase and Sale Agreement constitute enforceable agreements setting forth the conditions of Drew's employment, including his salary and the transfer of Thomas Motors, and those written contracts thus supercede the 1997 oral contract alleged by Drew in Count I, the Court affirms the decision of the district court dismissing the unjust-enrichment claim on an alternative basis, because an express enforceable agreement covers the same subject matter. *Blaser*, 121 Idaho at 1017, 829 P.2d at 1366.

The Management Contract and Purchase and Sale Agreement superceded the prior oral contract because this Court has held "a contract may be set aside by a subsequently executed contract which either deals with the subject matter of the prior contract so comprehensively as to raise the inference of substitution or is so inconsistent with the prior contract that the two cannot stand together." *Walter E. Wilhite Revocable Living Trust v. Nw. Yearly Meeting Pension Fund*, 128 Idaho 539, 548, 916 P.2d 1264, 1273 (1996).  Each of the terms that Drew claims exist in the unjust-enrichment claim—his salary, employment duties, and the transfer of Thomas Motors—is covered in the written contracts.  Further, Paragraph 24.1 of the Purchase and Sale Agreement provides, in pertinent part: "There are no oral agreements or representations between the parties which affect this transaction, and this Agreement supercedes all previous negotiations, warranties, representations and understandings between the parties.  True copies of all documents referenced in this Agreement are attached to this Agreement."  Therefore, so long as the written contracts were validly executed, they supercede any oral agreements.

"Formation of a valid contract requires that there be a meeting of the minds as evidenced by a manifestation of mutual intent to contract." *Inland Title Co. v. Comstock*, 116 Idaho 701, 702, 779 P.2d 15, 16 (1989). "Formation of a contract is generally a question of fact for the trier of fact to resolve." *Id.* at 703, 779 P.2d at 17.  Drew claims that the written contracts were never in effect because they were not signed by Ron and Elaine at the time Drew signed them in

---

[7] Namely, the Management Contract provides that:

> To the extent that Corporation's net profit in any month during the term of this Contract exceeds Fifty Thousand and No/100 Dollars ($50,000.00), such excess shall be distributed to Shareholders as a dividend for that month and such amount shall reduce the total purchase price that General Manager [Drew] otherwise would pay pursuant to Section 14 of that certain Agreement for Purchase and Sale of Business Assets dated September 1, 2000 between Corporation and General Manager (the "Agreement.")

12

September 2000, and in October of 2000, Ron told Drew he was not going to sign the contracts because Ron had already promised to give the business to Drew. Drew claims he did not see the signed contracts until this litigation began, and thus given his father's statements that he was not going to sign or follow the contracts, and the fact that Drew never received a copy of the contracts signed by Ron and Elaine before litigation began, it is possible the contracts were not signed by Ron and Elaine until after this litigation began. He also alleges that Ron may have forged Elaine's signature.

Respondents claim that Ron and Elaine signed the written contracts in September 2000, which is evidenced by the date (September 16, 2000) next to the signature on the contracts themselves. From a review of the record, it seems that Drew obtained an expert to conduct forensic testing on the original written contracts to determine the dates they were signed, the results of which were "inconclusive as they related to identifying specific dates." Respondents had the burden to prove the absence of all material facts, but Drew may not rest upon bare allegations and denials in order to create an issue of fact. *Baxter v. Craney*, 135 Idaho 166, 170, 16 P.3d 263, 267 (2000). Rather, Drew "must set forth specific facts showing that there is a genuine issue for trial." *Id.*; I.R.C.P. 56(e). Drew provides no actual evidence that his mother's signature was forged or that she otherwise did not sign the contract on the date on the contract other than bare allegations. As such, he has not provided sufficient evidence to create a genuine issue of fact regarding whether and when the contracts were signed. We therefore hold that the written contracts are valid and enforceable, supercede any oral agreement, and cover the same subject matter as the unjust-enrichment claim. Accordingly, we affirm the district court's dismissal of the unjust-enrichment claim.

## C. The District Court Did Not Abuse Its Discretion in Awarding the Respondents $118,084.01 in Costs and Attorney Fees.

The district court granted $115,749.20 in attorney fees and $2,334.81 in costs as a matter of right to Respondents for a total amount of $118,084.01 pursuant to I.C. § 12-120(3) and I.R.C.P. 54(e). It also declined to award the Respondents discretionary costs in obtaining accounting and banking experts because it held that the costs were not "exceptional" as required by I.R.C.P. 54(d)(1)(C), in this case involving the alleged breach of an agreement to transfer a business. On appeal, Drew challenges the amount of attorney fees awarded, arguing that the amount is excessive and unreasonable. Although Drew argued at the trial court level that under

I.C. § 12-120(3) there was no transaction and that if there was a transaction, it was not commercial, Drew does not raise those arguments on appeal. Accordingly, the only question on appeal is whether the district court abused its discretion in the amount of fees it awarded.

Under I.C. § 12-120(3), "in any civil action . . . in any commercial transaction . . . the prevailing party shall be allowed a reasonable attorney fee to be set by the court." "The 'reasonableness' of an attorney fee award is based on the trial court's consideration of the factors in I.R.C.P. 54(e)(3)."[8] *Sun Valley Potato Growers, Inc. v. Tex. Refinery Corp.*, 139 Idaho 761, 769, 86 P.3d 475, 483 (2004). "An award of attorney fees under I.C. § 12-120(3) is reviewed for an abuse of discretion." *P.O. Ventures, Inc. v. Loucks Family Irrevocable Trust*, 144 Idaho 233, 239, 159 P.3d 870, 876 (2007). "[T]he court need not specifically address all of the factors contained in I.R.C.P. 54(e)(3) in writing, so long as the record clearly indicates that the court considered them all." *Mihalka v. Shepherd*, 145 Idaho 547, 553, 181 P.3d 473, 479 (2008) (quoting *Parsons v. Mut. of Enumclaw Ins. Co.*, 143 Idaho 743, 747, 152 P.3d 614, 618 (2007) (internal quotations omitted)). Based on a review of the record, it seems that the district court considered all the factors in making its decision. After stating that it had applied the factors in Rule 54(e)(3), the court went on to explain:

> A very significant amount of time and labor had to be expended by Defendants to conduct discovery, to respond to the activity of Plaintiff's counsel, and to raise the matters Defendants believed were important. From the Court's own perspective, this case has demanded a significant amount of time on a myriad of matters. The

---

[8] Rule 54(e)(3) provides:

(3) *Amount of Attorney Fees.* In the event the court grants attorney fees to a party or parties in a civil action it shall consider the following factors in determining the amount of such fees:

(A) The time and labor required.
(B) The novelty and difficulty of the questions.
(C) The skill requisite to perform the legal service properly and the experience and ability of the attorney in the particular field of law.
(D) The prevailing charges for like work.
(E) Whether the fee is fixed or contingent.
(F) The time limitations imposed by the client or the circumstances of the case.
(G) The amount involved and the results obtained.
(H) The undesirability of the case.
(I) The nature and length of the professional relationship with the client.
(J) Awards in similar cases.
(K) The reasonable cost of automated legal research (Computer Assisted Legal Research), if the court finds it was reasonably necessary in preparing a party's case.
(L) Any other factor which the court deems appropriate in the particular case.

Court certainly cannot find that Defendants were wasteful in their approach to this litigation, caused unnecessary expense, or were not reasonable in the way they conducted this lawsuit.

Defendants submitted a memorandum of attorney fees and costs in which they addressed each of the factors in Rule 54(e)(3). Unlike the party receiving fees in *Sun Valley Potato Growers*, the Respondents here submitted time sheets setting forth the amount of time spent on each issue and the amount charged by each attorney. *Sun Valley Potato Growers*, 139 Idaho at 769, 86 P.3d at 483. The district court stated that it had considered each factor, and as the quoted portion of the Order above shows, the district court considered the time and labor, the difficulty of dealing with "myriad" matters, and the reasonableness of the Respondents in conducting their defense. The district court had "sufficient information at its disposal," provided by the Respondents, in order to consider the factors in Rule 54(e)(3). *Id.* Thus, this Court holds that the district court did not abuse its discretion in the amount of attorney fees it awarded.

**D.     Neither Party Is Awarded Attorney Fees On Appeal.**

Drew requests attorney fees on appeal under I.C. § 12-120 and -121. Drew is not the prevailing party, and thus we do not award him fees under either section. *Chandler v. Hayden*, 147 Idaho 765, 773, 215 P.3d 485, 493 (2009). Respondents request attorney fees on appeal under I.C. § 12-121 on the basis that Drew brought the appeal frivolously and without foundation. Drew did not bring this appeal without foundation because the district court erred in granting summary judgment on the unjust-enrichment claim before it had specifically found that a contract covering the same subject matter was enforceable. While we ultimately affirm the district court's decision, the appeal was not frivolous or without merit as required to award fees under I.C. § 12-121. I.R.C.P. 54(e)(1). Drew raised a legitimate error of the district court. Therefore, no fees are awarded to Respondents on appeal.

## VI. CONCLUSION

The Court affirms the decision of the district court dismissing the unjust-enrichment claim. While the district court erred in granting summary judgment on the unjust-enrichment claim before it had found that an enforceable contract covering the same subject matter existed, we find as a matter of law that the written contracts are valid and enforceable and covered the same subject matter, and we therefore affirm on that alternative basis. The district court did not abuse its discretion in awarding attorney fees to the Respondents below as the prevailing party. Neither party is awarded attorney fees on appeal. Costs are awarded to Respondents.

15

Chief Justice EISMANN, Justices BURDICK, J. JONES and HORTON **CONCUR.**