# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket 42161

JANET RICE, individually, and as successor
in interest of EUGENE RICE, deceased, and
REAL PROPERTIES, LLC, an Idaho limited
liability company,

    Plaintiffs-Counterdefendants-
    Respondents,

v.

DENNIS SALLAZ and REAL HOMES, LLC,
an Idaho limited liability company,

    Defendants-Appellants,

and

GLENN TREFREN and TRADESMAN
CONTRACTORS AND CONSTRUCTION,
LLC, an Idaho limited liability company,

    Defendants-Counterclaimants-
    Appellants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
.

Boise, September 2015 Term

2015 Opinion No. 96

Filed: September 25, 2015

Stephen W. Kenyon, Clerk

---

Appeal from the District Court of the Third Judicial District of the State of Idaho, Canyon County.  Hon. Juneal C. Kerrick, District Judge.

The judgment of the district court is <u>affirmed</u> in part and <u>vacated</u> in part, and the case is <u>remanded</u>.

Vernon K. Smith, Boise, for appellants.

J. Kahle Becker, Boise, for respondents.

---

J. JONES, Chief Justice

Defendant Dennis Sallaz and Defendants/Counterclaimants Glenn Trefren and Tradesman Contractors and Construction, LLC, (collectively "Appellants") appeal the district

court's holding they could not recover breach of contract damages or obtain equitable relief for the failure of Plaintiff/Counterdefendant Real Properties, LLC, to pay the full purchase price under an agreement for the sale and purchase of Real Homes, LLC. Although the district court found that the contract between Sallaz and Trefren, as sellers, and Real Properties, as buyer, was valid, it held that Real Properties' performance of the contract was excused because of a material breach by the sellers. The Court held that equitable relief was not available because of the existence of the contract.

## I.
## FACTUAL AND PROCEDURAL BACKGROUND

Dennis Sallaz and Renee Baird married in 1996. After having separated in the fall of 2003, they divorced on July 28, 2005. The property and debt issues were hotly contested, tried before the court on four separate occasions between November of 2005 and July of 2006, and determined in a written decision entered on October 30, 2007. Among the assets at issue in the divorce trial were Real Homes, LLC, and the real property thought to be owned by that entity. Sallaz and Baird presented conflicting evidence, including different forms of the operating agreement and various other documents, that made it unclear who had an ownership interest in Real Homes.

The original articles of organization for Real Homes were filed on January 19, 2001, listing Sallaz as the registered agent and Baird as the manager. In 2003, Sallaz filed amended and restated articles of organization, listing himself as a member and signing the document as "owner." An operating agreement introduced into evidence by Baird, signed and dated January 19, 2001, provided that she was the 100% owner of Real Homes. Another version offered by Sallaz provided that he owned 50% of Real Homes with the other 50% being owned by Glenn Trefren, each purportedly having contributed $25,000 in value.[1] This document was signed by both Sallaz and Trefren but included no date on the signature page or otherwise. With the exceptions of the names of initial contributors and the signatures, the operating agreements provided by Sallaz and by Baird were essentially identical. Both versions provided that Real Homes would dissolve upon the occurrence of any of a number of specified events, including the "sale of all or substantially all of the LLC's assets."

---

[1] The judge in the divorce case found that "[t]he evidence at trial established that Mr. Trefren did not make such a contribution."

In February 2001, Real Homes purchased five acres of land and divided it into four lots referred to as lots 1A, 1B, 2A, and 2B. Real Homes purchased interests in two additional lots in 2002, referred to by the parties as the Smith Property. In 2004, Lot 1B was transferred from Real Homes to Sallaz and Baird as individuals, and Baird began to reside in a home on that lot after she and Sallaz separated. On February 16, 2005, Trefren, purportedly acting as a member of Real Homes, executed a quitclaim deed to grant all real property owned by Real Homes to Tradesman, his own LLC. This deed purported to include the transfer of Lot 1B to Tradesman, even though that lot had apparently already been transferred to Baird in 2004.[2]

Sallaz is an attorney and was the long-time counsel for plaintiffs, Eugene and Janet Rice and their LLC, Real Properties.[3] On January 4, 2006, Sallaz formed Real Properties for the Rices. Two days later, on January 6, 2006, Sallaz and Trefren entered into a contract with Real Properties titled "Purchase Agreement for Sale of Interest in Real Homes, LLC." This contract identified Trefren and Sallaz as "Seller" and Real Properties as "Buyer." The agreement recited that it was purportedly for the sale to Real Properties of (1) 100% of the ownership interest in Real Homes from Trefren and Sallaz as individuals, and (2) "all right, title and interest in and to all real property owned by Real Homes, LLC as set forth on Exhibit A attached hereto." Attachment A to the agreement described the four lots (1A, 1B, 2A, and 2B) purchased by Real Homes in 2001 as well as the Smith Property.[4] The contract was signed by Sallaz as an individual "Co-Owner," Trefren as an individual "Co-Owner," and Trefren as a "Co-Owner" on behalf of Real Homes. Eugene Rice signed as manager of Real Properties. In exchange for 100% of the interest in Real Homes, Real Properties was to pay $250,000 in the manner specified in the agreement. The Rices paid from their personal funds approximately $68,000 of the purchase price.

Under the agreement, Sallaz and Trefren warranted among other things that: (1) they owned 100% of Real Homes; (2) they "have good and marketable title to said Ownership Interest

---

[2] With respect to this particular parcel, on February 27, 2009, Sallaz in his individual capacity quitclaimed his interest in Lot 1B to Real Homes. Also acting in his individual capacity, Sallaz quitclaimed his interest in Lot 1B to Baird on March 2, 2009.

[3] Eugene Rice is now deceased.

[4] As noted above, at the time the purchase agreement was entered into, Real Homes did not own any real property, the same having been deeded to Tradesman by Trefren on February 16, 2005. In their opening brief on appeal, Appellants assert that Mr. Trefren was concerned about Baird's dealings with the assets of Real Homes and that "he proposed, and Dennis Sallaz agreed, to have the assets of Real Homes transferred to Tradesman . . . which action put those assets out of Baird's reach."

being sold and transferred hereunder with absolute right to sell, assign and transfer same to Buyer free and clear of all liens, pledges, security interests or encumbrances and without any breach of any agreement to which he is a party;" (3) "all real properties owned by Real Homes, LLC, and being transferred herein are free and clear of all encumbrances;" and (4) "Real Homes, LLC has free and clear title to [the described] real properties and Sellers shall execute any and all documents requested by Buyer to transfer all interest therein to Buyer." On March 2, 2006, Trefren recorded four separate quitclaim deeds dated January 6, 2006. The first purported to convey Lots 1A, 2A, and 2B from Tradesman to Real Properties. The second purported to also convey Lots 1A, 2A, and 2B from Real Homes to Real Properties. The third purported to convey the Smith Property from Tradesman to Real Properties. The fourth purported to also convey the Smith Property from Real Homes to Real Properties. The purchase and sale agreement was not disclosed to Baird until April 2006, at the divorce trial. On March 6 and 10, 2006, respectively, Sallaz assigned his interest in the purchase and sale agreement to an attorney representing him in another case in the amount due that attorney and to Trefren in any remaining amount owing Sallaz under the agreement.

Following trial, the judge hearing the divorce case found that the version of the operating agreement offered by Baird was the original operating agreement for Real Homes, meaning that she was the 100% owner at the time of formation. The court further found that Baird's full ownership meant that any changes to the operating agreement without her approval were void and that she, therefore, retained her 100% interest in Real Homes, including all its assets and liabilities. These assets were thought to include Lots 1A, 2A, 2B, and the Smith Property. The divorce judge also noted that there were potential third-party claims to Real Homes and its assets but that the court could not rule on those claims in the divorce action.

The Rices, Real Properties and Real Homes brought the current action against Baird, Sallaz, Trefren, and Tradesman,[5] seeking among other things: (1) to declare the validity of the

---

[5] In their brief, Respondents contend that Sallaz, their personal attorney, urged the Rices to bring this action against him in order to quiet title to the property that Real Homes purportedly sold to Real Properties. According to Respondents, "[t]his case was initiated by the Rices and Real Properties, LLC at the request and direction of Dennis Sallaz and his assignee, Glenn Trefren." As support for this contention, Respondents cite to a letter in the record written by Sallaz to plaintiffs' former counsel, the attorney who filed this action against Sallaz, Trefren, and Tradesman, advising that "[b]oth Trefren and myself are willing and supporting Defendants and stand ready to participate to the max." For his part, Sallaz contended that he and the Rices "were the best of friends jointly suing my ex-wife, Renae Baird, to quiet title on the Real Homes, LLC properties." He also said that he "was still Rice's best and only friend and attorney up to 2011," and that "[i]t was I, who after many conversations with Rice about the

4

purchase and sale agreement; (2) to quiet title in the subject real property in Real Properties; (3) unjust enrichment damages; and (4) damages for breach of the purchase and sale agreement. By the time of trial, plaintiffs' only remaining claim was count 5, alleging breach of the purchase and sale agreement.[6] Baird had been removed as a defendant after the Rices agreed not to pursue any claim they may have had against Lot 1B where Baird had been living. Sallaz filed an answer with a number of affirmative defenses. Trefren and Tradesman filed an answer asserting a three-count counterclaim. The district court held a bench trial on Real Properties' breach of contract claim and Trefren's and Tradesman's counterclaims.

The district court found that Real Properties' count 5 sought damages for Sallaz' and Trefren's alleged breach of warranties in the agreement that they had good and marketable title to the membership interests in Real Homes and the absolute right to transfer those interests. This alleged breach was primarily premised on Real Properties' argument that Baird had a 100% ownership interest in Real Homes, as found by the court in the divorce action. The defendants moved to dismiss count 5, arguing Real Properties failed to prove that Baird was a member of Real Homes at the time of the agreement. The district court granted defendants' motion, finding, contrary to the decision in the divorce case, that the operating agreement offered by Sallaz showing that he and Trefren were the 50/50 owners of Real Homes represented the actual ownership interests in that entity.[7]

---

necessary quiet title action, recommended that we engage my attorney . . . to represent all three of us in the Real Homes, LLC property sale and purchase and quiet title action." He contended, however, that the attorney who filed the complaint recommended that Sallaz and Trefren be designated as defendants, rather than plaintiffs, contrary to Sallaz' original concept.

[6] As written, count 5 in the complaint was brought as an alternative claim, premised on a situation where the court would find "the purchase and sale agreement invalid or unenforceable." Count 5 designated Real Homes as a defendant, whereas it had been a plaintiff for the declaratory and quiet title claims. The trial court found that count 5 should have been premised on the court finding the purchase and sale agreement was "valid and enforceable," because the claim is based on a breach of that agreement. The parties do not appeal this finding and we will not disturb it.

[7] The district court made this finding in its memorandum decision entered on February 28, 2014. The court could not have known at the time that this Court would enter a final decision in the Baird/Sallaz divorce case six months later, affirming the district court's intermediate appellate decision affirming the magistrate judge's findings of fact, conclusions of law, and decision in the divorce action. *Sallaz v. Sallaz*, 157 Idaho 342, 336 P.3d 275 (2014). In that appeal, Sallaz did not challenge the findings of fact and conclusions of law regarding the division of community property and indebtedness. Rather, he raised a specious claim that there had never been a valid marriage between the two, in spite of the fact that he had never previously raised the issue in the divorce action and had, indeed, sworn under oath that the parties were married. *Id.* at 347, 336 P.3d at 280. In their opening brief on appeal in this case, the Appellants grudgingly acknowledged the Court's decision in the divorce case, saying "the Idaho Supreme Court upheld the existence of that marriage, including the community property interests that Ms. Baird derived from her 'ownership' of Real Homes, on what can only be characterized as a pseudo-common law basis."

In count 1 of the counterclaim, Trefren claimed Real Properties breached the purchase and sale agreement by failing to pay the agreed amount of $250,000. The district court agreed that Real Properties breached the agreement but also found that Real Properties was excused from performance because a material breach by defendants defeated the fundamental purpose of the contract. The court found that Real Homes had sold all or substantially all of its assets upon the execution of the purchase and sale agreement, which required the LLC to be wound up under the terms of its operating agreement. It further found that Idaho law does not authorize the transfer of interests in the winding up of an LLC. The court reasoned that because the transfer of the ownership interest was not authorized under Idaho law, the defendants breached the covenant that they had the "absolute right to sell, assign and transfer the same to Buyer … without any breach of any agreement to which" they were a party and, in fact, were not authorized to transfer their member interests in Real Homes to Real Properties. The court, therefore, dismissed count 1. However, the court found that the transfer of the ownership interests in Real Homes took place as a factual matter, despite being unauthorized, meaning Real Properties had control of Real Homes after the agreement was executed.

In count 3 of the counterclaim, Trefren and Tradesman claimed they were entitled to recover for unjust enrichment if they could not recover damages for Real Properties' breach of the purchase and sale agreement. The district court determined that Trefren and Tradesman could not pursue equitable relief because of the existence of a valid contract. The district court dismissed count 2 and that ruling has not been appealed. Following the district court's decision, the defendants filed a motion for reconsideration, which was denied. They filed a timely appeal.

## II.
## ISSUES PRESENTED ON APPEAL

1.  Whether the district court erred in holding that Real Properties' performance of the purchase agreement was excused.

2.  Whether the district court erred in dismissing Counterclaimants' unjust enrichment claim.

3.  Whether an award of attorney fees to any party is appropriate.

## III.
## STANDARD OF REVIEW

When reviewing the decision of a trial court following a bench trial, this Court limits its review to "whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions of law." *City of Meridian v. Petra Inc.*, 154 Idaho 425, 434–35, 299 P.3d

6

232, 241–42 (2013) (quoting *Shore v. Peterson,* 146 Idaho 903, 907, 204 P.3d 1114, 1118 (2009)). The Court does not set aside the trial court's findings of fact unless clearly erroneous. *Id.* at 435, 299 P.3d at 242. However, the Court exercises free review over the trial court's conclusions of law and may draw its own legal conclusions from the trial court's findings. *Id.*

The interpretation of an unambiguous contract and whether the terms thereof have been violated are questions of law. *Id.* In an unambiguous contract, its terms must be given their plain and ordinary meaning. *Id.* Whether a valid contract has been formed is generally a question of fact. *Thomas v. Thomas*, 150 Idaho 636, 645, 249 P.3d 829, 838 (2011).

## IV.
## ANALYSIS

**A.** **The district court erred in dismissing the Counterclaimants' claim for breach of contract.**

The district court found the purchase and sale agreement was a valid contract on its face. It found that the express language of that agreement, together with the evidence adduced at trial, showed the obligations of the parties were to (1) transfer 100% of the interests of Sallaz and Trefren in Real Homes to Real Properties in exchange for Real Properties' payment of $250,000, and (2) transfer all real property owned by Real Homes to Real Properties, for which no additional payment was required. The court found Real Properties did not perform its obligation to pay the purchase price as agreed. However, it also found that Real Properties was excused from such performance because Sallaz and Trefren materially breached the agreement by warranting they had the absolute right to sell 100% of their interests in Real Homes when, in fact, Idaho law prevented the transfer of those interests because Real Homes was required by the terms of the transaction to be wound up. Essentially, the court found the execution of the agreement triggered dissolution for Real Homes because it amounted to a sale of all or substantially all of that entity's assets, and Idaho law does not authorize the transfer of ownership interests in the winding up of an LLC.

Sallaz and Trefren argue they did not receive full payment despite performing all of their obligations under the agreement (1) to transfer their interests in Real Homes, and (2) to cause the real property described in the agreement to be transferred to Real Properties. Appellants argue the district court erred in finding the execution of the agreement to be a dissolution event because (1) Real Homes did not transfer any property to Real Properties, as it did not actually own the property at the time of the execution, so the property transfer could not have amounted to the

7

transfer of all of Real Homes' assets, and (2) a property-development entity such as Real Homes may, in the ordinary course of its business, acquire several properties and then liquidate its assets and this common business practice should not result in an unexpected, involuntary dissolution.[8] Real Properties argues that Real Homes is the only entity that may have had a claim with respect to the real property transferred to Real Properties under the agreement, and Sallaz and Trefren failed to assert any such claims on behalf of Real Homes below.

Once a party to a contract has proven another's breach of that contract, the breaching party has the burden of pleading and proving affirmative defenses that may legally excuse performance. *Idaho Power Co. v. Cogeneration, Inc.*, 134 Idaho 738, 747, 9 P.3d 1204, 1213 (2000). "A material breach is more than incidental and touches the fundamental purpose of the contract, defeating the object of the parties entering into the agreement." *Borah v. McCandless*, 147 Idaho 73, 79, 205 P.3d 1209, 1215 (2009). "If a breach of contract is material, the other party's performance is excused." *J.P. Stravens Planning Assocs., Inc. v. City of Wallace*, 129 Idaho 542, 545, 928 P.2d 46, 49 (Ct. App. 1996) (citing *Ervin Constr. Co. v. Van Orden*, 125 Idaho 695, 700, 874 P.2d 506, 511 (1993)). "[W]hether there was a breach of the terms of a contract is a question of fact. Whether such a breach is material is also a factual question." *Borah*, 147 Idaho at 79, 205 P.3d at 1215 (internal citations omitted).

During the relevant periods, the LLCs in this case were governed by the Idaho Limited Liability Company Act, Idaho Code sections 53-601 through 53-672.[9] The Act provided, "[a] limited liability company is dissolved and its affairs shall be wound up … upon the occurrence of events specified in writing in the articles of organization or an operating agreement." I.C. § 53-642 (repealed effective 2010). The Act authorized those responsible for winding up an LLC to perform a number of enumerated actions. I.C. § 53-644(2) (repealed effective 2010). This list of actions does not expressly include the authorization to transfer membership interests in the

---

[8] Appellants make only very brief argument on this latter point, which is unconvincing. It is the language contained in their own operating agreement that requires dissolution upon the sale of all assets. Therefore, it is unreasonable for them to argue such a sale cannot result in dissolution. They do cite to one case in support of this argument, *Blaine Cnty. Title Assoc. v. One Hundred Bldg. Corp.*, 138 Idaho 517, 521, 66 P.3d 221, 225 (2002). However, the page to which they cite shows the Court very generally relying in part on a standard business practice in making its decision. The case does not at all speak to the specific practices at issue here and does not appear to support Appellants' position.

[9] This Act was subsequently replaced by the Idaho Uniform Limited Liability Act, which became effective July 1, 2010. I.C. §§ 30-6-101 *et seq*. In 2015, the Idaho Legislature repealed the Uniform Act, effective July 1, 2017. 2015 Idaho Sess. Laws ch. 243, § 2. No party argues the district court erred in applying the Idaho Limited Liability Company Act.

winding up of an LLC. *See id.*

The district court concluded Real Homes dissolved upon the execution of the agreement because its operating agreement provided that it would dissolve upon the sale of all or substantially all its assets, and executing the agreement amounted to such an event. The court therefore found that under Idaho Code section 53-642 this event required Real Homes to be wound up. But the record does not support the district court's conclusion that Real Homes was dissolved by the execution of the purchase and sale agreement. The court's conclusion is problematic for several reasons.

First, the court raised the theory of dissolution *sua sponte*. Evidence was not adduced at trial that was aimed at proving dissolution, nor did either party mention the possibility of dissolution in their written closing arguments.[10] Second, the logical sequence of executing the purchase and sale agreement and the quitclaim deeds makes the sale of the land recited in the agreement superfluous and of no legal effect. The purchase and sale agreement appears to be the document by which the parties intended to transfer the interests in Real Homes to Real Properties. There is not a separate document in the record purporting to officially transfer the ownership interests. At the moment the parties executed that agreement, all equity interest of Sallaz and Trefren in Real Homes transferred to Real Properties and, consequently, all assets owned by Real Homes at that time passed to Real Properties, including any real property. Therefore, any recitation or execution of other documents purporting to transfer real property from Real Homes to Real Properties was superfluous. Any such recitation or execution was merely duplicative of the transfer that had already occurred with the transfer of the ownership interests. Once the agreement was signed, neither of its previous owners had any legal authority to transfer any property owned by Real Homes to Real Properties, because they no longer had the power to act on behalf of Real Homes. Third, and most importantly, it is clear that Real Homes no longer owned any of the real property described in the agreement. Real Homes had deeded all of its real property to Tradesman on February 16, 2005. Therefore, there was no actual transfer of any property owned by Real Homes when the agreement was executed, because Real

---

[10] Although the district court raised the issue *sua sponte*, that problem was not raised by Appellants in their opening brief. When Appellants raised it in their reply brief it was mentioned only in passing and without argument or authority.

9

Homes owned no property as of that day.[11]

Additionally, even if there had been a dissolution event, the district court erred in concluding that one cannot legally transfer an ownership interest in an LLC after an event of dissolution. In reaching this conclusion, the court relied only on the language of Idaho Code section 53-644, which provided:

> (2) The persons winding up the business or affairs of the limited liability company may, in the name of, and for and on behalf of, the limited liability company:
>   (a) Prosecute and defend suits;
>   (b) Settle and close the business of the limited liability company;
>   (c) Dispose of and transfer the property of the limited liability company;
>   (d) Discharge the liabilities of the limited liability company; and
>   (e) Distribute to the members any remaining assets of the limited liability company.

I.C. § 53-644 (repealed effective 2010). Nothing in this section indicates that it is an exhaustive list of all actions permitted during the winding up of an LLC. It simply provides a number of actions that are expressly authorized to be taken by the LLC. This section speaks only to those actions that may be taken "in the name of, and for and on behalf of, the limited liability company." *Id.*; *see also Howard v. Perry*, 141 Idaho 139, 143, 106 P.3d 465, 469 (2005). Here, the transaction to sell Sallaz' and Trefren's ownership interests was not an action taken for or on behalf of Real Homes, but was executed by each of them as individuals. Therefore, section 53-644 does not apply.

Because there was no dissolution event of Real Homes in 2006 and because Sallaz and Trefren would not have been prevented from selling their ownership interests regardless,[12] the district court erred in determining Sallaz and Trefren materially breached the purchase agreement

---

[11] It is worth noting that Real Homes' transfer of all its property to Tradesman the prior year could have amounted to a dissolution event in 2005. There was testimony at trial regarding various cash amounts held by Real Homes at various times, so it is unclear whether the transfer of all the real property in 2005 would have amounted to substantially all of Real Homes' assets.

[12] Although Trefren and Sallaz were not precluded from transferring their ownership interests in Real Homes, the Court is concerned that Trefren and Sallaz purported to sell those interests while appearing to represent that Real Homes owned several parcels of property—none of which it actually owned. The price Real Properties was willing to pay for Real Homes was presumably based on the value of the property that was to accompany the acquisition. As a practical matter, Real Properties acquired nearly everything it was promised in the agreement—100% ownership of Real Homes and several parcels of property described in the agreement, excepting Lot 1B. However, the purchase agreement represented that Real Homes then owned all of the described real property free and clear of encumbrances and that it would be conveyed to Real Properties by Real Homes, not by Tradesman.

by transferring their interests.

The district court determined that the purchase and sale agreement was valid and that Real Properties had breached the agreement by failing to pay the full purchase price. However, the district court erred in holding that Real Properties' performance was excused and we therefore vacate such holding. Real Properties had asserted twenty-four affirmative defenses in its answer to the counterclaim, including quasi-estoppel, judicial estoppel, impossibility, breach of warranty of marketable title, lack of adequate consideration, intentional misrepresentation and fraud.[13] It appears that some of these defenses were the subject of proof at the trial of this matter before the district court and such defenses will necessarily be the subject of further consideration on remand to the district court.

## B.    Counterclaimants' "unjust enrichment" claim.

Trefren and Tradesman argue in count 3 of their counterclaim that if they are not entitled to breach of contract damages under count 1 they are entitled to recover on the theory of unjust enrichment. The district court dismissed this claim, reasoning that they could not recover for unjust enrichment where there is an express contract over the same subject matter. The court stated that it could not apply unjust enrichment where there was an enforceable contract, and it reiterated that it had found an enforceable contract in this case.

> Count 3 of the counterclaim alleges,
>
> That as a result of Defendant's transfer of all right, title and interest in and to Real Homes, LLC and all property owned by Real Homes, LLC, and Plaintiff's failure to pay and subsequent breach of the Purchase Sale Agreement, Plaintiff's (sic) have been unjustly enriched as a result thereof, and the contract and all property transfers should be set aside with the parties being returned to their respective pre Purchase Sale Agreement positions.

Based on this language, it appears that one, or possibly both, of the defendants sought rescission of the purchase agreement based on an unjust enrichment theory. However, following trial Trefren moved to amend count 3 "to conform to the evidence presented on the counterclaims." The gist of the motion was to amend count 3 to seek quantum meruit recovery. In its memorandum decision, the district court observed that "Trefren had indicated an intention to

---

[13] In their brief on appeal, Respondents state that they were asserting claims against Sallaz, personally, for legal malpractice and breach of fiduciary duty in connection with the Real Homes, Real Properties transaction in Ada County Case No. CV0C-2011-7253. The Court notes that on July 21, 2014, an Ada County jury found that Sallaz had acted as the Rices' attorney in that transaction, had committed legal malpractice, and had breached his fiduciary duty, but assessed damages at zero. That case has been appealed to this Court and is currently pending as Docket No. 42698.

seek "restitution damages, based on unjust enrichment," rather than rescission, and that count 3 was "apparently asserted by Trefren only." However, the thrust of the motion to conform with the evidence was sought to assert a quantum meruit claim. It is not clear whether Trefren intended to abandon the unjust enrichment claim. The district court denied the motion to amend to conform with the evidence, finding:

> even if the implied-in-fact contract remedy applied here, Trefren has not identified evidence in the record demonstrating the reasonable value of the property he provided to Real Properties, LLC or Roy Rice under the alleged contract. In addition, even if the implied-in-fact contract remedy applied here, Trefren has not identified any evidence in the record demonstrating the reasonable value of the property—his interest in Real Homes, LLC—which he provided to Real Properties, LLC or to Roy Rice under the alleged contract.

While the above finding appears to have been directed toward the quantum meruit theory that Trefren wished to pursue, it may also have application to any unjust enrichment claim made by Trefren. In order to make a claim for unjust enrichment, a party must show "(1) there was a benefit conferred upon the defendant by the plaintiff, (2) appreciation by the defendant of such benefit; and (3) acceptance of the benefit under circumstances that would be inequitable for the defendant to retain the benefit without payment to the plaintiff for the value thereof." *Med. Recovery Servs., LLC v. Bonneville Billing and Collections, Inc.*, 157 Idaho 395, 398, 336 P.3d 802, 805 (2014). However, whether or not Trefren presented a valid claim for unjust enrichment at trial is a matter for the district court to determine on remand. Remand is necessary with regard to count 3 because the district court premised dismissal of that claim on its holding on count 1— that the purchase contract was not enforceable by virtue of excuse of performance. Because we have vacated that holding, we must necessarily vacate the ground for dismissal of count 3.

In *Bates v. Seldin*, the Court clarified the law regarding the interplay of unjust enrichment and express contract. 146 Idaho 772, 776–77, 203 P.3d 702, 706–07 (2008). The Court stated:

> Appellants argue that the doctrine of unjust enrichment is inapplicable where a contract exists between the parties. Appellants' analysis, however, is incorrect. An award for unjust enrichment may be proper even though an agreement exists. The existence of an express agreement does not prevent the application of the doctrine of unjust enrichment. Only when the express agreement is enforceable is a court precluded from applying the equitable doctrine of unjust enrichment in contravention of the express contract. Once the jury determined that the contract was not enforceable because Appellants had proved an affirmative defense, the jury properly considered Respondents' claim of unjust enrichment.

*Id.* at 776–77, 203 P.3d at 706–07 (internal citations omitted). Thus, because the availability of unjust enrichment depends upon the resolution of any related breach of contract claims, an unjust enrichment claim cannot be resolved before the contract claims. *Thomas*, 150 Idaho at 644, 249 P.3d at 837. Whether Trefren presented evidence establishing any claim for unjust enrichment will depend on the district court's resolution of the breach of contract claim on remand. The district court's dismissal of count 3 is vacated and the case is remanded for further proceedings.

**C.      The issue of attorney fees is remanded for further proceedings.**

Appellants sought attorney fees at the district court under Idaho Code sections 12-120(3) and 12-121 and Idaho Rule of Civil Procedure 54, and they seek attorney fees on appeal under Idaho Code section 12-120(3). Respondents seek attorney fees on appeal under Idaho Appellate Rules 40 and 41, but have failed to cite a statutory basis for a fee award. The district court did not expressly rule on the issue of attorney fees, perhaps because it dismissed all claims by each party. Appellants are entitled to attorney fees only if they were the "prevailing party" under Idaho Code section 12-120(3) or section 12-121. "In this case, any determination of the prevailing party is 'premature' because the Court does 'not yet know who will prevail in this action.'" *Safaris Unlimited, LLC v. Von Jones*, 158 Idaho 846, 353 P.3d 1080, 1085 (2015) (quoting *Spokane Structures, Inc. v. Equitable Inv., LLC*, 148 Idaho 616, 621, 226 P.3d 1263, 1268 (2010)). For the same reason, the Court declines to award either party attorney fees on appeal. At the conclusion of this litigation in district court, the court may in its discretion award attorney fees to the eventual prevailing party and may consider, to the extent it deems proper, an award of attorney fees for this appeal. *Id.* at 851, 353, P.3d at 1085.

V.<br>CONCLUSION

We affirm the judgment of the district court, save and except the dismissal counts 1 and 3 of the counterclaim, which we vacate and remand to the district court for further proceedings. Neither party is awarded attorney fees on appeal. Costs to Appellants.


Justices EISMANN, BURDICK, W. JONES and HORTON CONCUR.